[No. 34781.   Department One.   March 26, 1959.]

LEON R. LEWIS *et al.*, *Respondents*, v. FRED B. ROOT *et al.*, *Appellants.*[1]

*Omar S. Parker*, for appellants.

*John B. Adams*, for respondents.

[1]Reported in 337 P. (2d) 52.

HUNTER, J.—This is an appeal from a judgment of damages awarded to the plaintiffs as a result of an alleged breach of contract by the defendants for the sale of shingles.

The facts are in dispute but may be summarized at this point as follows: Plaintiffs Leon R. Lewis and Floyd L. Lewis were doing business under the assumed name of State Shingle Company. Bud Bohl, manager of one of their yards, asked R. A. Carmichael, a shingle broker, to obtain for the plaintiffs' company, one thousand squares of No. 1-5x green certigrade shingles. A purchase order dated July 7, 1955 and signed by R. A. Carmichael was sent to the Fred B. Root Supply Company in Hoquiam, Washington, operated as a partnership by defendants Fred B. Root, Jack L. Root, and Herbert G. Root, also doing business as Root Builders Supply and Root Paint & Glass Company. The purchase order stated the terms of the contract with a price of $11.75 per square, f. o. b. Los Nietos, California, and also provided "Mr. Bohl wants one truck load and preferrably two each week until order is completed. Please confirm this order direct to Bud Bohl." The defendants did not send any confirmation to the plaintiffs but three shipments were made on July 23, August 8, and August 15, 1955, respectively, in compliance with the terms as provided in the purchase order, for a total of 456¾ squares. Shortly thereafter the market price of the shingles rose and the defendants ceased to make any further shipments. Leon R. Lewis, one of the plaintiffs, contacted defendant Fred B. Root regarding the order, several times by telephone and also personally, as to when any further shipments would be made but none were forthcoming. Thereafter, according to the testimony of Leon R. Lewis, when advised by Fred B. Root that he did not intend to ship, plaintiff Leon R. Lewis purchased the balance of the shingles necessary for the completion of the order from one Schafer Lumber Company, Aberdeen, Washington, for a higher price.

Subsequent thereto plaintiffs brought this action alleging that the purchase order had been signed by R. A. Carmichael, acting as agent for the defendants, and attached a copy

to the complaint which was signed "Thanks Bud; R. A. Carmichael." Plaintiffs also alleged that the defendants, in compliance with and in recognition of said purchase order, had shipped a certain quantity of the order but failed to ship the balance. Defendants answered and denied that R. A. Carmichael was their agent, or that they ever accepted the offer by reason of the fact that it provided for confirmation of the order directly to Bud Bohl, which they had not done.

Following the trial the court made findings of fact to the effect that the parties had entered into a binding contract evidenced by a purchase order signed by R. A. Carmichael, acting as agent for the defendants; that the defendants, in compliance with and in recognition of said purchase order contract, made three different shipments to the plaintiffs at the agreed price; and that the defendants thereafter refused to complete the contract, although demand was made by plaintiffs. Judgment was entered for the plaintiffs for the additional cost of the shingles in the amount of $700.06, and transportation cost of $17.96, resulting from the breach of the contract. Defendants appeal.

Appellants first contend that the evidence does not support the finding of a contract between the parties. They argue that there can be no contract because there was a conditional or qualified acceptance, at the outset, shown by the testimony of Fred B. Root, to the effect that he did not accept the order according to its terms, but consistently stated he would do the best he could; that he did make some shipments, but not in pursuance of the purchase order. The testimony of respondent Leon R. Lewis was directly contrary to that of the appellant Fred B. Root. He testified as follows:

"Q. And those times that you talked to him [Fred B. Root] on the telephone, did you discuss with him the filling of this order? A. Yes, I did. I asked him when he was going to ship the balance of the order. Q. And by that order you are referring to Plaintiffs' Exhibit 1 here, in which you require 1,000 squares, is that correct? A. That is correct. Q. And what was his answer to you? A.  .  .  .

he indicated he would ship them out just as soon as he possibly could, and it would be in the very near future. On the second call I think he told me that there was difficulty at the mill and that they had shut down temporarily, and as soon as they started up he would ship the order, and I think on the third telephone call, I happened to find out the mill was operating again, so I called him again, and he said yes, he would get them out just as soon as he got some trucks. . . ."

From the conduct of the parties and the testimony of appellant Fred B. Root and respondent Leon R. Lewis, there is sufficient testimony in the record to support the theory advanced by both parties. The trial court saw fit to believe the testimony supporting respondent's theory, which it adopted in its findings of fact which became the established facts of the case. See *Croton Chemical Corp. v. Birkenwald, Inc.,* 50 Wn. (2d) 684, 314 P. (2d) 622 (1957); *Fancher v. Landreth,* 51 Wn. (2d) 297, 317 P. (2d) 1066 (1957); *Fischler v. Nicklin,* 51 Wn. (2d) 518, 319 P. (2d) 1098 (1958); *Kuyath v. Anderson Constr. Co.,* 52 Wn. (2d) 174, 324 P. (2d) 264 (1958); *Hinz v. Lieser,* 52 Wn. (2d) 205, 324 P. (2d) 829 (1958); *Wise v. Farden, ante* p. 162, 332 P. (2d) 454 (1958).

In the case of *Pillsbury Flour Mills v. Independent Bakery,* 165 Wash. 360, 5 P. (2d) 517 (1931), which is similar on the facts to the instant case, we said:

"This appeal presents for determination only one question, which we state as follows:

"Where an order for a quantity of goods to be delivered in installments is given to a salesman subject to the seller's written approval, does that order become a binding contract on the seller's delivery of a number of the installments, without communication by the seller to the buyer of acceptance of the order?"

The question was answered in the affirmative, and we stated:

"The contracts were for delivery by installments. One contract was for the shipment of fifteen hundred barrels of flour; the other for four hundred and fifty barrels of flour. It was not contemplated—in fact, it was agreed otherwise—that all of the flour would be delivered in one shipment.

Under that arrangement, as soon as one installment of flour was delivered and accepted the contracts became binding on the parties. Thereafter, the appellant was bound to perform by delivering the remainder of the flour called for in the contracts. A corresponding obligation was imposed upon the respondent of accepting the remainder of the flour under the contract. Failure of performance on the part of either would entitle the other party to recover for the damages suffered by the breach of the contract."

In the present case, as soon as the first shipment of shingles was delivered by the appellants and accepted by the respondents, in pursuance of the order of July 7, 1955, the contract became binding upon the parties. By their failure to deliver the balance of the shingles, as called for in the purchase order, the appellants were answerable to the respondents for their damages suffered as a result of the breach.

The appellants contend, however, there is no evidence in the record of the market price of the goods at the time when they ought to have been delivered, or at the time of refusal of delivery. RCW 63.04.680, which relates to damages for failure to deliver goods, provides as follows:

"(3) Where there is an available market for the goods in question, the measure of damages, in the absence of special circumstances showing proximate damages of a greater amount, is the difference between the contract price and the market or current price of the goods, at the time or times when they ought to have been delivered, or, if no time was fixed, then at the time of the refusal to deliver."

In the instant case, as heretofore stated, respondent Leon R. Lewis testified there was a refusal by appellant Fred B. Root, on or about the last of November or the first of December, 1955, to make any further deliveries; that on the same day he purchased the shingles necessary for completion of the order from the Schafer Lumber Company in Aberdeen; that the market price at the time of entry into the contract with the appellants was "within 25¢ a square of that [$11.75]," and went up to about $1.00 to $1.75 per square; that at the time he bought the shingles from Schafer Lumber Company, the market was strong and he paid

$13.00 per square for 300 squares, and $13.07 per square for 300 squares. The trial court was entitled to believe this testimony of respondent Leon R. Lewis, which it did, and conclude therefrom that the price paid for the shingles to the Schafer Lumber Company was not above the market or current price of shingles, on the date of the refusal of performance by the appellants.

The last contention of the appellants is that the action should have been dismissed because of respondents' failure to comply with RCW 19.80.040, which provides that one shall not be entitled to maintain any suit in any court of this state unless he first alleges and proves that he has filed his certificate of assumed name. This contention is without merit.

■ The record discloses that the trial court allowed an amendment to the complaint during the trial permitting respondents to allege and show that a certificate of assumed business name had been filed subsequent to the commencement of the action but prior to the trial. In *Malfa v. Crisp*, 52 Wash. 509, 100 Pac. 1012 (1909), we held that there was a substantial compliance with the spirit of the statute where long before trial, plaintiffs filed the certificate and obtained leave to amend their complaint, which amendment was made before the statute of limitations had run against their action and after answer by the defendants, who did not stand upon the demurrer, *inasmuch as the defendants were not prejudiced thereby*. There was no prejudice to the appellants in the instant case resulting from the trial amendment, which appellants' counsel admits. The appellants' motion was therefore properly denied.

Finding no error in the record, the judgment of the trial court is affirmed.

WEAVER, C. J., MALLERY, DONWORTH, and OTT, JJ., concur.