**Diana SCHUTZE and Cheryl Watts**

v.

**Don SPRINGMEYER and Victor Drakulich**

**No. Civ.A. G–97–484.**

United States District Court, S.D. Texas, Galveston Division.

Jan. 15, 1998.

Mark Wesley Collmer, Houston, TX, Lannis W. Temple, Austin, TX, for Plaintiffs.

Billy Shepherd, Cruse, Scott, Henderson & Allen, L.L.P., John D Vogel, Cruse, Scott et al., Kevin B. Finkel, Johnson, Finkel and DeLuca, Houston, TX, for Defendants.

### ORDER

KENT, District Judge.

In this action, Plaintiffs Diana Schutze and Cheryl Watts brings claims of legal malpractice against Defendants Don Springmeyer and Victor Drakulich. Now before the Court is Defendant Drakulich's Motion to Dismiss for Want of *In Personam* Jurisdiction, filed August 28, 1997. For the reasons stated below, the Motion is **DENIED.**

## I. FACTUAL BACKGROUND

In July of 1992, Springmeyer and Drakulich decided to begin working together as plaintiff attorneys on cases involving temporomandibular joint ("TMJ") implants manufactured by Vitek, Inc. According to Defendant's Motion to Dismiss, the Defendants "wanted to present a unified front but did not wish to form a partnership. Consequently, they went into business under the name of 'Drakulich & Springmeyer' but contend that no partnership was formed and no partnership liability attaches." Springmeyer and Drakulich filed a "Certificate of Business: Fictitious Firm Name" in Nevada, stating that the firm was made up of "Don Springmeyer, Ltd." and "Victor G. Drakulich, CHTD."

Springmeyer and Drakulich allegedly formed the association with the purpose of collaborating on TMJ implant litigation involving Plaintiffs and others against E.I. duPont de Nemours & Co. (the "duPont litigation"). This litigation was commenced in federal district court in Nevada. According to Springmeyer's affidavit, Plaintiffs Schutze and Watts, both residents of Brazoria County, Texas, called Springmeyer at his office in Nevada and asked if he would represent them in the TMJ litigation. Both Plaintiffs signed a "Legal Representation Agreement" with Springmeyer & Drakulich in October of 1992. At some point, according to Drakulich's affidavit, Springmeyer amended the Complaint to add causes of action against The Methodist Hospital ("Methodist"). Drakulich claims that he was "totally unaware at the time" that Methodist had been sued, and also unaware that the case against Methodist was dismissed by the Nevada court in 1992.[1] The instant action arises from Plaintiffs' allegations that the Defendants were negligent in the discharge of their legal duties to the Plaintiffs, and specifically that the Defendants neither timely appealed the Nevada court's dismissal of Methodist, refiled the cases in Texas, nor referred the cases to anyone who could file those claims in Texas.

## II. ANALYSIS

In federal court, personal jurisdiction over a nonresident defendant is proper if: (1) the defendant is amenable to service of process under the forum state's long-arm statute; and (2) the exercise of personal jurisdiction over the defendant is consistent with due process. *Jones v. Petty–Ray Geophysical Geosource, Inc.*, 954 F.2d 1061 (5th Cir.1992). The Texas long-arm statute authorizes service of process on a non-resident defendant if the defendant "does business" in Texas. Tex.Civ.Prac. & Rem.Code Ann. § 17.042. Because the phrase "doing business" has been interpreted to reach as far as constitutionally permissible, the jurisdictional inquiry under the Texas long-arm statute collapses into a single due process inquiry. *Ruston Gas Turbines, Inc. v. Donaldson Co.*, 9 F.3d 415, 418 (5th Cir.1993); *Schlobohm v. Schapiro*, 784 S.W.2d 355, 356–57 (Tex.1990).

Whether the exercise of personal jurisdiction over Defendant Drakulich is consistent with the Due Process Clause of the United States Constitution involves a two-pronged inquiry. First, the Court must conclude that Defendant has "minimum contacts" with Texas. *International Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945). Second, the Court must also conclude that requiring Defendant to litigate in Texas does not offend "traditional notions of fair play and substantial justice." *Id.; see also Wilson v. Belin*, 20 F.3d 644, 647 (5th Cir.1994); *Ruston Gas Turbines*, 9 F.3d at 418.

A defendant establishes minimum contacts with the forum state by purposefully engaging in conduct directed toward the forum state "such that [the defendant] should reasonably anticipate being haled into court there." *Burger King Corp.*, 471 U.S. at 474, 105 S.Ct. at 2183 (quoting *World–Wide Volkswagen*, 444 U.S. at 297, 100 S.Ct. at 567). The "minimum contacts" aspect of due process can be satisfied by finding either specific jurisdiction or general jurisdiction. *Wilson*, 20 F.3d at 647. For general personal jurisdiction, the defendant's contacts with the forum state must be both "continuous and systematic" and "substantial." *Id.* at 647, 650–51.

In the context of general jurisdiction, it appears from the record that Drakulich has very few contacts indeed with the State of Texas.[2] Included in the Motion to Dismiss is a list of things Drakulich has never done in Texas. According to Drakulich, he never communicated with either Plaintiff, and has never solicited legal business in the State of Texas. Only two Texas connections are apparent: first, that Drakulich traveled to Texas "on a handful of occasions between 1988 and 1997" in order to depose witnesses in

---

1. No pleadings from the Nevada litigation have been presented to the Court. The Court further notes that both of the parties have done a universally shoddy job of relating the relevant facts to this Court.

2. Springmeyer & Drakulich likewise has (or had) very few general contacts with the State of Texas.

three cases unrelated to this litigation; and second, that Drakulich has traveled to Texas twice as a professional boxing referee.

This case, however, turns on specific jurisdiction. Specific personal jurisdiction exists over a non-resident defendant if the defendant has " 'purposefully directed' his activities at the residents of the forum, and the litigation results from alleged injuries that 'arise from or relate to' those activities." *Burger King,* 471 U.S. at 474, 105 S.Ct. at 2183 (citations omitted); *Villar v. Crowley Maritime Corp.,* 990 F.2d 1489 (5th Cir. 1993), *cert. denied,* 510 U.S. 1044, 114 S.Ct. 690, 126 L.Ed.2d 658 (1994). The critical inquiry, therefore, is whether the defendant, by directing activities to the forum state, purposefully availed himself of the privilege of conducting activities within the forum state, thereby invoking the benefits and protections of its laws. *See, e.g., Holt Oil & Gas Corp. v. Harvey,* 801 F.2d 773, 777 (5th Cir. 1986). The defendant's connection with the forum state must be of such a nature that the defendant should reasonably anticipate being haled into court there. *Id.; see also Ham v. La Cienega Music Co.,* 4 F.3d 413, 415 (5th Cir.1993). A single contact with the forum state can be sufficient to support specific jurisdiction. *Ruston Gas Turbines,* 9 F.3d at 419; *Southmark Corp. v. Life Investors, Inc.,* 851 F.2d 763, 772 (5th Cir.1988).

Plaintiffs argue that exercise of personal jurisdiction over Drakulich is proper because Springmeyer, by securing the contracts with Schutze and Watts, was acting as Drakulich's agent. Plaintiffs advance a somewhat interesting theory based on Defendant's contention that "Springmeyer & Drakulich" was not a legal entity, but only a loose association. The contracts Plaintiff signed with Springmeyer bore the heading "Springmeyer & Drakulich." Plaintiffs argue that if no legal entity existed, Springmeyer could not have been acting on behalf of "Springmeyer & Drakulich" when he solicited the contracts, so he must have been acting as Drakulich's personal agent.

■ The Court need not address Plaintiffs' argument. Specific jurisdiction exists in this case because Defendant Drakulich agreed with Springmeyer to work on Plaintiffs' cases regarding TMJ litigation with duPont. Although Drakulich repeatedly asserts that he and Drakulich agreed to collaborate solely on the duPont litigation, the evidence reveals that the Methodist litigation was a part of the duPont litigation, as Methodist was added as a defendant in the duPont pleadings. Plaintiffs agreed to be represented by "Springmeyer & Drakulich" in the entire action, not just in the action against duPont, regardless of the specific agreement between Springmeyer and Drakulich. If the Methodist claims had not been dismissed by the Nevada court, it seems apparent that the entire case would have been handled by Springmeyer & Drakulich. It is highly unlikely that the actions against duPont and Methodist would have been split by Defendants, with Drakulich working only on the duPont claim and Springmeyer working on all claims, when both the duPont and Methodist claims were part of the same litigation.

Defendant's contention that the "association" of "Springmeyer & Drakulich" was not a legal entity is unconvincing, despite Plaintiffs' attempt to wield the argument in their own favor. According to Nevada law, the purpose of fictitious name statutes is to prevent fraud and to inform the public of the true identity of those with whom the public conducts business. *Brad Assocs. v. Nevada Fed. Fin. Corp.,* 109 Nev. 145, 147, 848 P.2d 1064, 1066 (Nev.1993) (citing *Berg Metals Corp. v. Wilson,* 170 Cal.App.2d 559, 339 P.2d 869 (Cal.App.1959); *Nowels v. Ketchersid Music, Inc.,* 80 Idaho 486, 333 P.2d 869 (Idaho 1958); *Laliberte v. Wilkins,* 30 Wash. App. 782, 638 P.2d 596 (Wash.App.1981)). "The object of [the fictitious name statute] is that public notice shall be given and a public record made of the individual members of partnerships with such definiteness and particularity that those dealing with them may at all times know who are the individuals with whom they are dealing...." *Berg Metals,* 170 Cal.App.2d at 574, 339 P.2d at 878 (citation omitted).

■ Ironically, in this case Drakulich argues that because he and Springmeyer had merely filed a "fictitious" firm name, they were not really a partnership. Apparently

Defendant would have the word "fictitious" modify "firm" rather than "name." As evidenced by Nevada case law, fictitious firm names are required to be filed not to protect the firm from allegations that it is a legal entity, but to inform the public as to the identities of the entities it is actually dealing with. Evidence of a fictitious firm name does not prove that no legal entity exists.

■ Therefore, it appears clear that "Springmeyer & Drakulich" was a partnership, and that both Springmeyer and Drakulich are responsible for the partnership's liabilities. *See* NEV. REV. STAT. § 87.130 (partnership is bound where loss or injury is inflicted upon a third party by a partner acting in the ordinary course of the business of the partnership, and all partners are to be held jointly and severally liable for partnership liabilities). If not partners, they were "joint venturers" under Nevada law, as they had a contract and "both parties understood the synergistic effect of their respective contributions to the joint venture and its potential for profit." *Radaker v. Scott*, 109 Nev. 653, 659, 855 P.2d 1037, 1040 (Nev.1993). In a joint venture, "the negligence or fraud of one venturer, while acting within the scope of the enterprise, may be imputed to co-venturers so as to render the latter liable for the injuries sustained by third persons as a result of the negligence or fraud." *Id.* at 660, 855 P.2d at 1041.

The Court reaches the same result, however, regardless of whether or not a legal entity in fact existed between Springmeyer and Drakulich. The facts are clear that in the Nevada litigation involving TMJ implants, Springmeyer and Drakulich agreed to work together. Drakulich, therefore, agreed to represent Schutze and Watts in their litigation against duPont. The Court finds that

Drakulich thereby established minimum contacts sufficient to support specific jurisdiction in the controversy underlying this action. Because he represented Texas clients, Drakulich should have reasonably anticipated being haled into court in Texas for reasons related to that representation.[3]

■ The Court must next analyze whether the exercise of personal jurisdiction would offend "traditional notions of fair play and substantial justice." The fairness of exercising jurisdiction is determined by balancing the burden on the defendant, the interests of the forum State, the plaintiff's interest in obtaining relief, the interstate judicial system's interest in obtaining the most efficient resolution of the controversy, and the shared interest of the several States in furthering fundamental substantive social policies. *Asahi Metal Indus. Co. v. Superior Court of Cal.*, 480 U.S. 102, 113, 107 S.Ct. 1026, 1033, 94 L.Ed.2d 92 (1987) (quoting *World–Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 292, 100 S.Ct. 559, 564, 62 L.Ed.2d 490 (1980)); *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476–77, 105 S.Ct. 2174, 2184 85 L.Ed.2d 528 (1985).

The Court finds that the exercise of personal jurisdiction over Drakulich conforms to traditional notions of fair play and substantial justice. Drakulich clearly intended to represent Plaintiffs in the duPont litigation, and it is only fair to ask him to now defend himself against allegations that some of Plaintiffs' claims were neglected in that lawsuit.[4] Because he agreed to represent two Texas residents, Drakulich cannot now claim that it would be unfair for him to have to defend himself—against allegations of negligence in a Texas court. Plaintiffs have a strong interest in being able to litigate their cause of action in Texas, and Texas has a strong interest in ensuring that its citizens'

---

**3.** The Court refuses to split, for purposes of personal jurisdiction, the duPont litigation into claims against duPont and claims against Methodist. To the Plaintiffs, the litigation was contained within one lawsuit. Drakulich cannot escape personal jurisdiction by claiming that he was responsible for some but not all of the claims in the lawsuit, especially since there is *no* evidence that his involvement in the case was limited to the duPont litigation.

**4.** Drakulich claims that he knew nothing of the amended complaint which added Methodist as a defendant, and did not learn of such until after Plaintiffs' statutes of limitations had already run. While these contentions may have a direct impact on Drakulich's liability, they are not critical to the Court's analysis of personal jurisdiction.

838

rights are well represented. Finally, the interests of judicial efficiency dictate that the claims against Springmeyer and Drakulich should be litigated in the same forum.

Specific personal jurisdiction exists over Defendant Drakulich because he had minimum contacts with Texas through his representation of Plaintiffs, and because requiring him to defend himself in this forum does not offend traditional notions of fair play and substantial justice. Accordingly, Defendant Drakulich's Motion to Dismiss for Want of *In Personam* Jurisdiction is hereby **DENIED.**

**IT IS SO ORDERED.**