**C & C/MANHATTAN, a joint venture, Plaintiff**
**v.**
**SUNEX INTERNATIONAL, INC., Defendant**

Civ. No. 98/1999

Territorial Court for the Virgin Islands

Division of St. Croix

October 14, 1999

Lee J. Rohn, Esq., *Law Offices of Lee J. Rohn*, Christiansted, St. Croix, U.S.V.I., *for Plaintiff*

Julio A. Brady, Esq., *Law Offices of Julio A. Brady*, Christiansted, St. Croix, U.S.V.I., *for Defendant*

CABRET, *Judge*

## MEMORANDUM OPINION

(October 14, 1999)

Plaintiff, C & C/Manhattan ("C & C/Manhattan"), is a Virgin Islands joint venture. Defendant, Sunex International, Inc. ("Sunex") is a Florida Corporation which entered into a contract with C & C/Manhattan to supply the joint venture with windows, doors, shutters and hardware to be used in renovating Government House on St. Croix. Although Sunex delivered some of these goods, C & C/Manhattan alleged that delivery was untimely and that the goods were nonconforming. Based on these allegations, C & C/Manhattan sued Sunex asking the Court to declare that C & C/Manhattan "does not owe the Defendant any moneys and is further entitled to retain all funds collected on behalf of Defendant and all goods."[1] C & C/Manhattan also prayed for damages allegedly caused by having to cure the defects and procure substitute goods. Sunex moved the Court to dismiss C & C/Manhattan's complaint, asserting: (1) the Court lacks personal jurisdiction, (2) the Virgin Islands Territorial Court is an inconvenient forum, and (3) C & C/Manhattan lacks capacity to maintain this action because it failed to properly register its trade name and one of the joint venturers failed to qualify as a foreign corporation under Virgin Islands law. For reasons which follow, Sunex's motion will be denied.

---

[1] Complaint at paragraph 11.

4

## 1. Lack of Personal Jurisdiction.

Sunex asserts that it has insufficient contacts with the Virgin Islands for the Court to exercise personal jurisdiction over the company. The Court disagrees.

> The resolution of a motion to dismiss for lack of personal jurisdiction is dependent on factual issues outside the pleadings. The plaintiff, as the party asserting personal jurisdiction, has the burden of establishing it. 2A James W. Moore et al., *Moore's Federal Practice* P 2-2 (2d ed. 1993). This burden of proof cannot be met by the allegations of the pleadings alone; rather, the plaintiff is required to establish facts supporting the court's jurisdiction through affidavits and the introduction of other competent evidence. *See Time Share Vacation v. Atlantic Resorts, Ltd.*, 735 F.2d 61 (3d Cir. 1984). The plaintiff need only make a prima facie showing that jurisdiction exists to survive the motion to dismiss. At this stage, all allegations of jurisdictional facts are considered in a light most favorable to an assertion of in personam jurisdiction. However, this presumption may be overcome at trial or upon a hearing on the motion.

*Hartman v. Texaco, Inc.*, 29 V.I. 41, 72-73 (D.V.I. 1993).

Viewed in a light most favorable to C & C/Manhattan, the evidence shows that although Sunex is a Florida Corporation that does not maintain any offices or employees in the Virgin Islands, its "principal business is the sale of building equipment from Florida for export to the Caribbean."[2] During a hearing on this matter, Sunex's president, Jerome Rand, testified that Sunex tries "to get work on all the islands almost everyday" and in the Virgin Islands "all the time."[3] Rand elaborated that Sunex attempts to sell building materials to Virgin Islands customers by "[r]eferrals, phone contacts, [and] faxes."[4] In addition, Rand travels to the Virgin Islands to "call[] on customers that [Sunex is] currently

---

[2] Aff. of Jerome S. Rand, Ex. E to Defendant's Motion to Dismiss.

[3] Hearing of May 27, 1999, Tr. at 94.

[4] *Id.* at 99.

doing business with here."[5] Rand estimated that, in addition to the contract at issue in the instant case, Sunex has sold approximately $300,000 dollars of construction supplies to Virgin Islands customers. Rand acknowledged that if there were ever problems with the goods, he would "more than likely" have to come to the Virgin Islands to resolve the problems.[6]

The subject of this action is Sunex's supply of building materials for the renovation of Government House on St. Croix. In this regard, the evidence shows that in 1997, the Government of the Virgin Islands awarded a contract for the renovation of Government House to a joint venture comprised of C & C Construction and Maintenance, Inc., a Virgin Islands corporation ("C & C Construction") and Manhattan (Bahamas) Limited, a Bahamas corporation ("Manhattan Bahamas").[7] For clarity, the Court will refer to this joint venture as the "Government House joint venture."[8] When the Government House joint venture sought out a supplier for doors and windows, it affiliated Manhattan Construction Company, an Oklahoma corporation with substantial resources. This newly formed joint venture, C & C/Manhattan, negotiated with Sunex for the latter company to provide the doors, windows, shutters and related hardware for the renovation project.[9] It appears that a considerable part of these negotiations involved telephone conversations, facsimile transmissions and

---

[5] *Id.* at 102.

[6] *Id.* at 94.

[7] Although the Government House contract was originally awarded to C & C Construction, in a contract addendum the contracting parties agreed to "the assignment of all management services and payments under the Contract to C & C/Manhattan, a Joint Venture composed of Manhattan (Bahamas) Limited and C & C Construction and Maintenance, Inc. All monies due or to become due and payable under the Contract shall be paid directly to C & C/Manhattan, a Joint Venture, as assignee." Hearing of June 11, 1999, Defendant's Ex. V , Construction Contract, Addendum No. V.

[8] The actual name of this joint venture is "C & C/Manhattan." The evidence indicates, however, that there are at least five different permutations of a joint venture named "C & C/Manhattan." Although the make-up of these joint ventures is the subject of considerable controversy among the parties in this case, the Court is only concerned with the composition of the plaintiff joint venture which contracted with Sunex. Because issues concerning the propriety of the Government House joint venture are not germane to this contract action, the Court will not address those issues here.

[9] Because the plaintiff in this case is a joint venture named "C & C/Manhattan," the Court will refer to the plaintiff as "C & C/Manhattan." As stated above, the Court will call the

mailings between Sunex in Florida and Manhattan Construction in Texas. The evidence shows, however, that Sunex knew the goods were destined for the Virgin Islands, and that during negotiations, a Sunex representative traveled to St. Croix to inspect and measure the Government House door and window openings where the goods would ultimately be installed.

In June of 1998, the parties executed a contract for Sunex to provide the doors, windows, shutters and hardware to C & C/Manhattan for a price of $1,375,558. The contract was executed by C & C/Manhattan in Texas and by Sunex in Florida. The contract price included the cost of the goods, insurance and the freight from Sunex's factory in Florida to St. Croix. The parties agreed that C & C/Manhattan would pay for the goods under a letter of credit established by Manhattan Construction and issued by a Pennsylvania bank in favor of Sunex.

Pursuant to the agreement, in the fall of 1998 Sunex began delivering containers of doors and windows to Tropical Shipping in Riviera Beach, Florida for shipment to C & C/Manhattan in St. Croix.[10] It appears, however, that at least some of the goods were nonconforming. Consequently, in November of 1998, a C & C/Manhattan representative, Phil Broom, complained to Sunex about the defects. During negotiations to resolve the problems, the parties corresponded by mail, facsimile and telephone. Some of this correspondence was between Sunex in Florida and Manhattan Construction in Houston, and other correspondence was between Sunex in Florida and C & C/Manhattan in St. Croix. In an effort to resolve the problems, Sunex offered to send representatives to St. Croix to confer with C & C/Manhattan and the Virgin Islands Government. Sunex also arranged for a St. Croix trucking company to "go to the job site to determine the cost of picking up [the defective goods] and delivering them to another site [on St. Croix.] so that [Sunex could] make the repairs."[11] Sunex also offered to

---

entity that was assigned the Government House contract the "Government House joint venture."

[10] While it appears that Sunex delivered at least four shipping containers of materials to C & C/Manhattan in St. Croix, the evidence does not indicate what percentage of the material this constitutes.

[11] Hearing of May 27, 1999, Tr. at 88.

7

cure deficiencies by sending a professional painting crew to St. Croix. Notwithstanding these offers, the parties never resolved their differences. Importantly, however, the evidence shows that Bill Shae, a Sunex representative, traveled to St. Croix on three separate occasions in connection with the Government House contract.

Finally, the evidence shows that Sunex attempted to negotiate two other contracts to supply construction materials for the Government House renovations. In March of 1999, Rand visited St. Croix to negotiate a contract under which Sunex would supply wood flooring and kitchen cabinets for the Government House renovations. Although Sunex was not awarded this contract, it did successfully negotiate a contract to supply stainless steel case work for the renovations.

Based on this evidence, C & C asserts that the Court has jurisdiction over Sunex pursuant to the Virgin Islands' long-arm statute which authorizes a court to exercise personal jurisdiction over a person who, among other things, "acts directly or by an agent, as to a claim for relief arising from the person's (1) transacting any business in this territory; [or] (2) contracting to supply services or things in this territory." V.I. Code Ann. tit. 5, § 4903 (a) (1), (2) (1997). The Court agrees that C & C/Manhattan's claim arose out of Sunex transacting business in the Virgin Islands.

> The phrase, "transacting any business" is a term of art which means less than doing business but more than performing some inconsequential act. It requires that a defendant engage in some type of purposeful activity within the territory. To invoke jurisdiction over a non-resident defendant under subsection (a)(1) of the Virgin Islands Long Arm Statute, a court must determine whether the claim which is being pursued arises from the non-resident defendant's, or its agent's, forum related activities, and whether there are enough contacts arising out of such activities as are required to justify the assertion of jurisdiction over the defendant.

*Hommel v. Scott*, 35 V.I. 32, 35-36 (Terr.Ct. 1996) (internal citations and quotation marks omitted). Such business transactions may consist of a defendant who consistently sells and delivers its

products to a plaintiff over time. *See Buccaneer Hotel Corp. v. Reliance Intl. Sales Corp.*, 17 V.I. 249, 158 (Terr. Ct. 1981) (dictum). And, "[c]onsidered cumulatively, solicitation of business in the form of sending catalogues, price lists, and bulletins, and supplying technical advice by telephone on the servicing of equipment in use in the Virgin Islands, provide a sufficient nexus for the court's assertion of jurisdiction over a non-resident defendant. *Hendrickson v. Reg O Co.*, 657 F.2d 9, 12 (3d Cir. 1981)." *In Re Tutu Wells Contamination Litigation*, 846 F. Supp. 1243, 1266 (D.V.I. 1993). It is well-established, however, that "a single act" may constitute the "transacting" of business within the meaning of section 4903(a)(1). *Id.*

In the instant case, Sunex transacted business in the Virgin Islands in connection to its building materials contract with C & C/Manhattan. The evidence is clear that Sunex contracted with a Virgin Islands joint venture to supply and deliver over 1.3 million dollars of doors, windows, shutters and hardware to the Virgin Islands for use in the Virgin Islands. On at least three occasions, a Sunex representative traveled to St. Croix to facilitate bid preparations and performance of the contract. In its attempts to cure deficiencies, Sunex made arrangements with a St. Croix trucking company to remove the nonconforming materials from Government House and deliver them to an offsite facility where the defects could be remedied. Although the contract was apparently not executed in the Virgin Islands, considering the size and nature of the contract, Sunex's obligations to deliver the materials to the Virgin Islands and the company's consistent personal and direct contacts with the territory in connection with its bid preparations and performance, the Court concludes that the defendant transacted business in the Virgin Islands.

In addition to establishing that Sunex's connections with the territory comply with the statutory grounds for conferring personal jurisdiction, C & C/Manhattan must show that the assertion of jurisdiction satisfies the requirements of constitutional due process. *Hendrickson*, 657 F.2d at 13-14. The constitutional test is generally whether "the defendant's conduct and connection with the forum State are such that he should reasonably anticipate being haled into court there." *Id.* at 15 (quoting *World-Wide Volkswagen*

9

*Corp. v. Woodson*, 444 U.S. 286, 297, 100 S. Ct. 559, 62 L. Ed. 2d 490 (1980); punctuation omitted). "To be subject to in personam jurisdiction, a defendant 'not present within the territory of the forum,' must have certain minimum contacts with it so that maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Id.* at 14 (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S. Ct. 154, 90 L. Ed. 95 (1945)). "If a defendant purposefully avails itself of the privilege of conducting activities within the forum state, it has clear notice that it is subject to suit there." *Hendrickson*, 657 F.2d at 15 (quoting *Hanson v. Denckla*, 357 U.S. 235, 253, 78 S. Ct. 1228, 1240, 2 L. Ed. 2d 1283 (1958); punctuation omitted). "This inquiry is discrete from that of the statutorily imposed prerequisites, although often the same facts must be reviewed." *Id.*

■ Sunex had sufficient minimum contacts with the Virgin Islands to satisfy the requirements of constitutional due process. It is undisputed that Sunex knew it was contracting with a Virgin Islands joint venture to supply construction materials to the Virgin Islands for use in the Virgin Islands. Indeed, Sunex's principal business is export of building materials to the Caribbean, and the company is constantly attempting to sell its products in the Virgin Islands. Sunex's president stated that the company consistently contacts Virgin Islands consumers by telephone, mail and facsimile and that he travels to the Virgin Islands to call on current customers. Furthermore, the president candidly acknowledged that if there are problems with Sunex's products, he would "more than likely" have to come to the Virgin Islands to resolve the problems.[12] Accordingly, there can be no doubt that Sunex's contacts with the territory are substantial, frequent and purposeful, and that the company "has clear notice that it is subject to suit there." *Id.* at 15.

### 2. Forum Non Conveniens.

The evidence shows that Sunex filed a separate action in Florida against C & C/Manhattan, Manhattan Construction and United Millwork Company, Inc. ("United Millwork"), a Florida Corpora-

---

[12] Hearing of May 27, 1999, Tr. at 94.

tion which Sunex retained to construct the doors and windows it sold to C & C/Manhattan. In the Florida action, Sunex alleges that C & C/Manhattan and Manhattan Construction breached the contract by failing to pay for the doors and windows, refusing to allow Sunex to cure alleged defects and failing to provide specifications necessary to manufacture required products. Sunex also alleges that these parties tortiously interfered with Sunex's contract with United Millwork by directly hiring United Millwork to provide the windows and doors which were the subject of C & C/Manhattan's contract with Sunex and that they fraudulently misrepresented the composition of the joint venture. Finally, Sunex alleges in the Florida action that the defendants committed civil theft by converting the building materials to their own use without payment. In the instant motion, Sunex contends that justice requires the Court to dismiss the instant case so that the issues may "better be tried in another forum."[13] The Court disagrees.

■ The Court's authority to dismiss a case based on forum non conveniens is provided by title 5, section 4905 of the Virgin Islands Code which states: "[w]hen the court finds that in the interest of substantial justice the action should be heard in another forum, the court may stay or dismiss the action in whole or in part on any conditions that may be just." V.I. Code Ann. tit. 5, § 4905 (1997). Under the doctrine, a trial court

> may, in the exercise of its sound discretion, dismiss a case when an alternative forum has jurisdiction to hear the case, and when trial in the chosen forum would establish . . . oppressiveness and vexation to a defendant . . . out of all proportion to plaintiff's convenience, or when the chosen forum is inappropriate because of considerations affecting the court's own administrative and legal problems.

*Lacey v. Cessna Aircraft Co.*, 862 F.2d 38, 42 (3rd Cir. 1988) (internal quotations marks omitted). In moving for dismissal based on forum non conveniens, a defendant must show that an adequate

---

[13] Defendant's Response to Plaintiff's Opposition to Motion to Dismiss at 12.

alternative forum exists and that the relevant private and public interests weigh heavily in favor of dismissal. *Id.* at 44.

To guide trial courts in this inquiry, the United States Supreme Court has specified the factors that should be considered. *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 67 S.Ct. 839, 91 L.Ed. 1055 (1947). In weighing the private interests of the litigants,

> [i]mportant considerations are the relative ease of access to sources of proof; availability of compulsory process for attendance of unwilling [witnesses], and the cost of obtaining attendance of willing[] witnesses; possibility of view of premises, if view would be appropriate to the action; and all other practical problems that make trial of a case easy, expeditious and inexpensive.

330 U.S. at 508, 67 S.Ct. at 843. The relevant public interest considerations include the administrative difficulties resulting from court congestion; the burden of jury duty on people of a community which has no relation to the litigation; the local interest in having controversies decided at home; and the avoidance of unnecessary problems in the application of foreign law. 330 U.S. at 508-09, 67 S.Ct. at 843. In *Gilbert*, the Supreme Court clearly ruled that "unless the balance is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed." 330 U.S. at 508, 67 S.Ct. at 843.

In the instant case, the Court finds that the private interests of the litigants weigh in favor of maintaining the action in Plaintiff's chosen forum. This case arose out of a sale of goods. At this juncture, there is not any dispute regarding the validity of the contract. Rather, it appears that Sunex acknowledged at least some deficiencies in the goods, and the dispute primarily involves Sunex's opportunity to cure and C & C/Manhattan's failure to pay for the goods. Considering the quantity and size of the goods at issue, it is clear that they could not, without great difficulty and expense, be moved to Florida to be used as evidence. In addition, all three corporations that comprise C & C/Manhattan are currently transacting business here. Thus, the relevant corporate representatives would likely be situated here for discovery and trial. Also present in the Virgin Islands are the individuals Sunex

12

contacted in connection with its offers to cure the defects. Though unclear, it is possible that some of these individuals would be identified as witnesses. As for the inconvenience to Sunex, it is likely that traveling here to defend this action would be costly. However, Sunex's offices are located in south Florida, which due to its proximity to the Caribbean, minimizes the inconvenience of flying here.[14] And, because Sunex representatives frequently fly to the Caribbean to conduct business, they are likely to be accustomed to such travel. Furthermore, the Court notes that Jerome Rand acknowledged in testimony that "[t]here is nothing inconvenient about [him] traveling to the Virgin Islands to meet with the governor to assist" in resolving the dispute with C & C/Manhattan.[15] Under these circumstances, the Court concludes that the private interests do not balance strongly in favor of Sunex. *See* 330 U.S. at 508, 67 S.Ct. at 843.

Turning to the public factors, the Court concludes that these too weigh in favor of a Virgin Islands forum. Although Sunex has not addressed the issue, the Court acknowledges that, like most other trial courts, it suffers from a crowded docket. This factor, however, has not precluded consideration of this case, and Sunex has presented neither argument nor evidence that the Florida court is better situated to accommodate the litigation. Additionally, the Court finds that this community has a strong interest in the controversy. The renovation of Government House is a focal point, both physically and figuratively of Christiansted, St. Croix's downtown revitalization efforts.[16] The costs of the Sunex materials comprises over 15 per cent of the total renovation contract. Under these circumstances, St. Croix residents certainly are interested in having the controversy decided here and they would not be unreasonably burdened by serving as jurors in the case. And,

---

[14] The Court takes judicial notice of the fact that travel between south Florida and the United States Virgin Islands is relatively convenient. This is based on the geographical proximity, number of flights and time of flight between the two destinations. *See* Fed. R. Evid. 201; *Northwest Airlines, Inc. V. County of Kent, Mich.*, 955 F.2d 1054, 1060 (6th Cir. 1992) (judicially recognizing travel time between airports).

[15] Hearing of May 27, 1999, Tr. at 92.

[16] The Court takes judicial notice of this fact. Though not in evidence, the significance of this project is generally known in the community and cannot be reasonably disputed. *See* FED. R. EVID. 201.

although the Florida community where Sunex resides would also have an interest in the financial affairs of one of its corporate citizens, it does not appear that these latter interests balance strongly in favor of Sunex. Finally, inasmuch as this sales contract controversy will likely be decided according to the provisions of the Uniform Commercial Code, which has been adopted by both Florida[17] and the Virgin Islands,[18] it does not appear that application of foreign law would pose a problem for either venue.

■ For these reasons, the court concludes that the relevant private and public interests do not weigh strongly in favor of Sunex and it will therefore not disturb the plaintiff's choice of forum. *See id.*

### 3. Failure to Comply with Registration Requirements.

Sunex contends that C & C/Manhattan's complaint should be dismissed because the joint venture failed to properly register its trade name and Manhattan Bahamas failed to qualify as a foreign corporation under Virgin Islands law. In response to this contention, C & C/Manhattan and Manhattan Bahamas presented evidence that both entities mistakenly believed they were properly registered with the Lieutenant Governor's Office. Both entities have now filed updated registration applications. Manhattan Bahamas has produced a registration certificate and C & C/Manhattan asserts that it has been assured by the Lieutenant Governor's Office that its application is complete. Notwithstanding these updated applications, Sunex argues that C & C/Manhattan's failure to register its trade name before filing suit bars this action. The Court disagrees.

The relevant Virgin Islands trade name registration requirements are contained in title 11, section 1203 of the Virgin Islands Code. According to section 1203, "[a] corporation doing business in the Virgin Islands under any name other than that of the corporation as set forth in the articles of incorporation or amendments" is subject to the requirements. V.I. Code Ann. tit. 11, § 1203 (1998). A corporation which fails to comply with the statute "may not

---

[17] Fla.Stat. § 672.101 (1989).

[18] V.I. Code Ann. tit. 11A, § 2-101 (1997).

14

commence or maintain any action in any court of the United States Virgin Islands for the enforcement of any right or obligation arising out of the doing of business in the United States Virgin Islands. . . ." tit. 11, § 1212.

In this case, the parties raise several arguments concerning whether a plaintiff can avoid dismissal of an action by curing filing deficiencies after suit has been filed. Sunex argues that the plain language of the statute mandates dismissal if, at the time an action is commenced, the plaintiff has not complied with section 1203. In response, C & C/Manhattan relies on caselaw interpreting a similar Virgin Islands franchise tax statute. *See Maison La Crepe, Inc. v. Hilbress Assoc. Ltd.*, 20 V.I. 106 (Terr. Ct. 1983). In *Maison La Crepe*, the plaintiff failed to pay its annual corporate franchise tax. The defendant moved to dismiss the action based on title 13, section 533 (a) of the Virgin Islands Code, which, like the trade name statute, provides that "[n]o corporation may commence or maintain any action in any court if it has not paid its annual franchise tax last due." V.I. Code Ann. tit. 13, § 533 (a) (1998). The court denied the motion, reasoning that "in almost all actions commenced or maintained by a corporation which has not paid its annual franchise tax last due, the corporation should be allowed a reasonable time within which to become reinstated as a corporation in good standing before dismissal under § 533 (a) will be ordered." *Maison La Crepe*, 20 V.I. at 107.

Based on these arguments, the Court must decide whether section 1203 should be interpreted to allow the same time to cure as courts have allowed under section 533(a). In this regard, the Court finds initially that the franchise tax statute and the trade name registration statute have different purposes. Although a Virgin Islands court has never construed the trade name statutes, courts in other jurisdictions have consistently found that such "fictitious name statutes are generally enacted to prevent fraud and to give the public information about those entities with which they conduct business." *Brad Assoc. v. Nev. Fed. Fin. Corp.*, 848 P.2d 1064, 1066 (Nev. 1993). *See also Schutze v. Springmeyer*, 989 F.Supp. 833, 836 (S.D.Tex. 1998) ("'The object of the fictitious name statute is that public notice shall be given and a public record made of the individual members of partnerships with such definiteness and

15

particularity that those dealing with them may at all times know who are the individuals with whom they are dealing.'"); *Aronson v. Price*, 644 N.E.2d 864, 868 (Ind. 1994) ("assumed business name filing requirement . . . provide[s] information to litigants and others as to the true party in interest when contracts are made or business is done in an assumed name.").[19] In contrast, the purpose of statutes which deny court access to corporations which have not paid franchise taxes is essentially to raise revenues. *See M & M Construction Co. v. Great American Insurance Company*, 747 S.W.2d 552, 554 (Tex.App. 1988); *Jet Boats, Inc. v. Puget Sound Nat. Bank*, 721 P.2d 18, 23 (Wash. 1986).

Despite these different objectives, the trade name filing and corporate franchise tax requirements share some important similarities. In the Virgin Islands and numerous other jurisdictions, both requirements are enforced with legislation that denies access to courts for a violating entity. *See* V.I. Code Ann. tit.11, § 1212; tit. 13, § 533 (a) (trade name and franchise tax violators "may not commence or maintain any action in any court"). *Compare* cases cited in Annotation, *Application of Statute Denying Access to Courts or Invalidating Contracts Where Corporation Fails to Comply with Regulatory Statute as Affected by Compliance After Commencement of Action*, 23 A.L.R.5th 744 (1994); *Lewis v. Root*, 337 P.2d 52 (Wash. 1959) (interpreting Washington statute that prohibits maintenance of suit by entity that fails to file assumed name certificate); *Michard v. Myron Stratton Home*, 355 P.2d 1078 (Col. 1960) (interpreting Colorado statute that prohibits violating entity from prosecuting any suit).[20] And, in most of these jurisdictions, courts have refused to dismiss an action when the violating entity has complied with the requirements in a pending case prior to trial. *See Annotation, supra;* (surveying cases in which courts permitted plaintiffs to

---

[19] The Court notes that although these statutes are referred to by different names, they all have the same objective: to inform the public of the true identity of business entity. *See Brad Associates*, 848 P.2d at 1066 (construing state's "fictitious name statute,"); *Aronson*, 644 N.E.2d at 868 (construing state's "assumed name filing requirement"); V.I. Code Ann. tit. 11, § 1213 (referring to "trade name" filing requirement).

[20] Some jurisdictions enforce trade name filing requirements with statutes defining a violation as a misdemeanor, *see, e.g., Phillips v. Hoke Construction, Inc.*, 834 S.W.2d 785 (Mo.App. 1992), and with legislation casting court costs on the violator. *See Barker v. Century 21-Atlanta East Realty, Inc.*, 293 S.E.2d 76 (Ga.App. 1982).

remedy franchise violations while case pending); *Tyrone v. Kelly,* 507 P.2d 65, 73 (Cal. 1973) (fictitious name statute "is a mere matter of abatement pending the trial, which has the result of suspending the trial until the statute is complied with. It is not jurisdictional."); *Michard,* 355 P.2d at 1081 (allowed plaintiff to remedy trade name violation while case pending); *Quarles v. Miller,* 86 F.3d 55, 57-58 (4th Cir. 1996) (discussing cases in which courts permitted action to continue after plaintiff cured violation).

■ As stated above, the issue of whether the Virgin Islands trade name statute permits a plaintiff to remedy the violation before trial is a question of first impression. It is clear, however, that our courts have interpreted the franchise tax statute to allow such remedial action. *See Cirino v. Hess Oil Virgin Islands Corp.* 384 F. Supp. 621 (D.V.I. 1973); *Maison La Crepe,* 20 V.I. at 107. The overwhelming weight of authority discussed above similarly authorizes a plaintiff to cure a trade name registration violation after suit has been filed. *See Tyrone,* 507 P.2d at 73; *Michard,* 355 P.2d at 1081. *See also Phlegar v. Virginia Foods, Inc.,* 51 S.E.2d 227, 228-29 (Va. 1949). Considering this authority, and noting that Sunex has cited no contrary authority, the Court concludes that the Virgin Islands trade name statute, tit. 11, § 1212, authorizes a plaintiff to comply with the requirements prior to trial in a pending action.

Turning to the instant case, the court rejects C & C/Manhattan's argument that the statute does not apply because the joint venture is not doing business under an assumed name. Section 1203 requires a corporation to register a trade name if it is "doing business in the Virgin Islands under any name other than that of the corporation as set forth in the articles of incorporation." V.I. Code Ann. tit. 11, § 1203. Such statutes have generally been construed to require registration "if the name used does not fairly disclose the true name of the individual." 65 C.J.S. *Names* § 9(3) (1966).

■ The name of the plaintiff in this case, C & C/Manhattan, clearly does not comply. As stated above, the joint venture consists of three corporations: C & C Construction and Maintenance, Inc., Manhattan Construction Company and Manhattan (Bahamas) Limited. The abbreviated nature of the joint venture name fails to

disclose that C & C actually refers to C & C Construction and Maintenance, Inc. Moreover, it is clear from the record that there are numerous entities using the name "Manhattan," and there is nothing in the joint venture name distinguishing Manhattan (Bahamas) from Manhattan Construction or any other Manhattan entities. Accordingly, the Court concludes that the name C & C/Manhattan must be registered as a trade name.

■ As the Court concluded above, however, a plaintiff is authorized to remedy a trade name registration violation while the case is pending. In this case, C & C/Manhattan has submitted a trade name application which, according to the plaintiff, has been accepted as complete by the Lieutenant Governor's office. Notwithstanding Plaintiff's assertion, this is not sufficient proof that it has complied with the statute. Accordingly, the Court will order C & C/Manhattan to produce evidence that it has properly registered its trade name.

## CONCLUSION

For the reasons stated above, the Court concludes that Sunex's Motion to Dismiss must be denied. Sunex has sufficient contacts with the Virgin Islands for the Court to exercise personal jurisdiction over the defendant. And, although Sunex will be inconvenienced by having to defend an action here, the relevant private and public interests do not balance strongly in favor of prosecuting the case in another forum. Finally, notwithstanding C & C/Manhattan's failure to properly register its trade name, a plaintiff is permitted to remedy this deficiency while a case is pending.

18