**Charles Winston HENDRICKSON and Cecillia Anne Hendrickson,**

v.

**REG O COMPANY, Appellant.**

**No. 80–2751.**

United States Court of Appeals, Third Circuit.

Argued April 29, 1981.

Decided Aug. 3, 1981.

---

R. Eric Moore (argued), O'Brien & Moore, Christiansted, St. Croix, V. I., for appellant.

Thomas Alkon, Christiansted, St. Croix, V. I., for appellee.

Before ADAMS, WEIS and GARTH, Circuit Judges.

## OPINION OF THE COURT

WEIS, Circuit Judge.

In this products liability case, we measure the length of the Virgin Islands long arm statute by its own terms, as well as by those of constitutional dimension. Although not physically present in the Islands, the defendant, an Illinois corporation, made various small but continuing direct sales in the Islands over a period of years. It maintained relationships with its Virgin Islands customers by mailing catalogues and price lists, as well as through long distance telephone calls that provided counseling on proper servicing of its equipment. We agree with the district court's conclusion that the corporation's activities constituted sufficient contacts to satisfy both statutory and due process considerations. Accordingly, we affirm.

In November 1979, the plaintiff, a resident of St. Croix, brought suit in the District Court of the Virgin Islands to recover for injuries from an explosion caused by an allegedly defective valve on a propane tank. The valve was manufactured by the defendant Reg O Company, a Delaware corporation with its principal office in Chicago, Illinois. Jurisdiction was based on the Virgin Islands long arm statute, 5 V.I.C. § 4903 (Equity 1967). The district court denied the defendant's motion to dismiss for lack of personal jurisdiction, and then certified the issue for appeal under 28 U.S.C. § 1292(b) (1976).

For the purpose of resolving the jurisdictional question, two uncontested affidavits were submitted to the court. These, together with the complaint, established that the accident occurred on St. Croix in December 1978 during the course of plaintiff's employment with the Carib Gas Corporation, when propane gas escaped from one of Carib's tanks through a valve manufactured by the defendant.

Reg O Company manufactures, distributes, and sells component parts for propane cylinders. The company's total annual sales are in excess of 35 million dollars. It has no offices, agents, or distributors in the Virgin Islands, and is not registered to do business there.

At the time suit was instituted, the Gas Company had about $221,500 worth of Reg O equipment either in use or in inventory, and Carib's competitors in the territory had at least that much. The Gas Company purchased most of this equipment from two of Reg O's independent distributors, as well as from Carib's parent corporation, National Propane Company.

Carib also made some direct purchases from Reg O in previous years. In calendar 1978, for example, there were seven separate direct sales to the Virgin Islands with an aggregate value of $1,292.73. These parts were shipped to the Islands by air parcel post or air freight. In 1979, there was one no charge transaction with Carib. In fiscal year May 1977 through May 1978, however, direct purchases by the Gas Company totaled $3,197.32.

In addition to direct and indirect sales, Reg O regularly sent catalogues, bulletins, and price sheets to Carib Gas, as well as blue prints of the equipment to assist the user. There was substantial correspondence between the two companies, and on various occasions Carib would call Reg O's customer representatives to discuss repair and servicing of its equipment.

The district court determined that Reg O had engaged in a persistent course of conduct within the meaning of the Virgin Islands long arm statute, and had also de-

rived substantial revenue from goods used in the Virgin Islands. 5 V.I.C. § 4903(a)(4). In rejecting the constitutional challenge, the court held that Reg O purposefully served the territory and that its direct and indirect activities were such that it could reasonably anticipate being amenable to the Islands' jurisdiction.

On appeal, the defendant contends that the court ignored the statute's requirement that the persistent conduct occur "in this territory." Instead, it is argued, the court focused on Reg O's action in placing its goods in interstate commerce, and found this sufficient to permit the exercise of the court's jurisdiction. The defendant also asserts that its average annual direct sales in the territory for the preceding five years—$1,800—did not constitute substantial revenues, and that the existence of over $200,000 worth of equipment there did not justify an inference of receipt of other revenues. Finally, the defendant argues that there were no constitutionally cognizable contacts with the jurisdiction.

The challenges to the district court's order are based on both statutory and constitutional grounds. Because it would not be necessary to reach the constitutional issue if the defendant's position on the statutory question is upheld, we will discuss that matter first. *Hagans v. Lavine*, 415 U.S. 528, 94 S.Ct. 1372, 39 L.Ed.2d 577 (1974).

The pertinent portion of the Virgin Islands long arm statute provides that:

"A court may exercise personal jurisdiction over a person who acts directly or by an agent as to a claim for relief arising from the person's . . . (4) causing tortious injury in this territory by an act or omission outside this territory if he regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenues from goods used or consumed or services rendered, in this territory . . . ."

5 V.I. § 4903(a)(4).

The statute is identical in all significant respects to Article I of the Uniform Interstate and International Procedure Act, 13 Unif.L.Ann. § 1.03, and was enacted in the Virgin Islands in 1965. *Jensen v. McInerney*, 299 F.Supp. 1309 (D.V.I.1969) (Maris, J.). The Commentary to § 1.03(a)(4) of the Uniform Act, which parallels the Virgin Islands provision, states that the exercise of jurisdiction is authorized when the tortious act takes place outside, but the injury occurs within, the forum, and some other reasonable connection between the forum and the defendant is present. "A sufficient nexus exists if (a) the defendant regularly advertises his products or services in a state or (b) carries on some other continuous course of activity there or (c) derives substantial revenue from goods used or consumed or from services rendered in the state. It is not necessary that this activity amount to the doing of business." § 1.03, 13 Unif.L.Ann. at 468.

The course of conduct which establishes jurisdiction need have no relationship to the tortious action. *Gatewood v. Fiat S.p.A.*, 617 F.2d 820 (D.C.Cir.1980). It is the totality of a defendant's connections with the forum state that must be considered. In some cases, for example, the facts may not establish that a defendant does business, or that, considered in isolation, revenues derived are substantial. When the defendant's conduct is viewed as a whole, however, a sufficient nexus may be found. *See Columbia Metal Culvert Co. v. Kaiser Industries Corp.*, 526 F.2d 724, 728 (3d Cir. 1975) (interpreting Pennsylvania statute).

Although each category in § 4903(a)(4) will independently support jurisdiction, all three may also be considered in combination. Thus, a defendant's activities, including a course of conduct, soliciting business, and deriving revenue from goods being used in the territory, may be sufficient cumulatively to establish a jurisdictional presence, even though no single element would suffice.

In the case at hand, the defendant argues that annual direct sales averaging $1,800 are insubstantial when contrasted with the company's annual sales of $35,000,000. The test of substantiality, however,

does not depend upon a comparison with the defendant's total sales, otherwise the statute would favor multibillion dollar corporations over those with smaller sales volumes. *See Gatewood v. Fiat, S.p.A., supra; Ajax Realty Corp. v. J. F. Zook*, 493 F.2d 818, 821 (4th Cir. 1972). A ratio test would also put a party at a disadvantage in attempting to establish jurisdiction over a tortfeasor that is a gigantic corporation, and might even raise equal protection difficulties. The substantiality of the revenues must be measured by objective factors, not the size of the defendant. The volume of sales here, although slight in terms of its percentage of total sales, were not isolated or exceptional occurrences, but were part of a regular course of dealing. *Cf. Norman's on the Waterfront v. West Indies Corp.*, 10 V.I. 495 (D.V.I.1974).

■ The record not only establishes that the defendant maintained contact with users of its products in the Virgin Islands through direct sales, but also that it solicited business by sending catalogues, price lists, and bulletins, and supplied technical advice by telephone on servicing its equipment in use on the Islands. This is solicitation of a more personal and direct nature within the jurisdiction than advertising in

nationally circulated publications printed outside the territory and circulated on the Islands. *Vencedor Manufacturing Co. v. Gougler Industries, Inc.*, 557 F.2d 886, 891 (1st Cir. 1977). *Cf. Scheidt v. Young*, 389 F.2d 58 (3d Cir. 1968) (advertising in a New York newspaper distributed in forum state without more not sufficient conduct of defendant to establish jurisdiction).

■ The defendant's method of promoting its products evidences solicitation of business, and provides a reasonable connection between the defendant and the forum, even though the defendant does not personally appear in the jurisdiction. This business seeking activity, combined with the company's continuing sales of its products to the Islands, also establishes a persistent course of conduct that was both voluntary and profitable. We are persuaded that the district court did not err in finding that there was adequate evidence of the defendant's business efforts "in the territory" so as to comply with the statute.[1]

We turn then to whether the assertion of jurisdiction in these circumstances satisfies the requirements of due process.[2] This inquiry is discrete from that of the statutorily imposed prerequisites, although often the same facts must be reviewed.[3] It is obvious

---

1. Because we find that Reg O's activities in the territory through its direct sales, solicitation, and other affirmative conduct meet the statutory prerequisites for in personam jurisdiction, we need not consider whether its indirect sales, through independent distributors, would also suffice to satisfy the statute.

2. The Revised Organic Act of the Virgin Islands incorporates by reference the fifth amendment and the second sentence of section I of the fourteenth amendment, the due process clause. 48 U.S.C. § 1561 (1976). In addition, Congress enacted a Bill of Rights for the territory, § 3 of the Revised Organic Act, which extends the federal constitution to the fullest extent possible to the Virgin Islands, as an unincorporated territory of the United States. *Id. See also In re Brown*, 439 F.2d 47, 50–51 (3d Cir. 1971). Thus, the Organic Act requires the same due process analysis that would be utilized under the federal constitution. *See also Gov't of the Virgin Islands v. Bodle*, 427 F.2d 532, 533 n.1 (3d Cir. 1970).

3. The district court in the Virgin Islands has held that the long arm statute extends jurisdic-

tion to the full limits permitted by the Constitution. *See Norman's on the Waterfront v. West Indies Corp.*, 10 V.I. 495, 509 (D.V.I.1974). The Comments to the Uniform Interstate and International Procedure Act note, however, that § 1.03(a)(4) is not as broad as "the Illinois statutes, as interpreted in *Gray v. American Radiator & Standard Sanitary Corp.*, 22 Ill.2d 432, 176 N.E.2d 761 (1961), and the Michigan statute (Mich.Stat.Ann. §§ 27A.705, 27A.715, 27A.725)." § 1.03, 13 Unif.L.Ann. at 468. Professors Wright and Miller also state that "Article I of the Uniform Act is a long-arm statute of moderate reach." 4 C. Wright & A. Miller, Federal Practice & Procedure § 1068 (1969).

Despite this, many decisions have interpreted the Uniform Act as being coextensive with the outer reaches of the due process clause. *See, e. g., Luckett v. Bethlehem Steel Corp.*, 618 F.2d 1373 (10th Cir. 1980) (Okl. law); *Boston Super Tools, Inc. v. R W Technologies, Inc.*, 467 F.Supp. 558, 561 (D.Mass.1979) (Mass. law); *Martin v. Kelley Electric Co.*, 371 F.Supp. 1225, 1227 (E.D.Ark.1974) (Ark. law), and cases cited therein. Because of the disposition reached in this case, however, we do not meet this issue.

that the reach of any long arm statute may not exceed the grasp permitted by the Constitution.

■ The due process inquiry usually begins with *International Shoe Co. v. Washington*, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945), and carries through to *World-Wide Volkswagon Corp. v. Woodson*, 444 U.S. 286, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980). In *International Shoe*, the Court said, to be subject to in personam jurisdiction, a defendant "not present within the territory of the forum, must have certain minimum contacts with it so that maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" 326 U.S. at 316, 66 S.Ct. at 158, *quoting Milliken v. Meyer*, 311 U.S. 457, 463, 61 S.Ct. 339, 343, 85 L.Ed. 278 (1940). Whether due process is satisfied depends on the quality and nature of the activity in relation to fair and orderly administration of the law. When a corporation conducts activities within a forum, it enjoys the benefit of state law and is subject to its obligations.

In *McGee v. International Life Insurance Co.*, 355 U.S. 220, 78 S.Ct. 199, 2 L.Ed.2d 223 (1957), the Court found jurisdiction in the forum state whose only connection with the defendant was the fact that it solicited and issued one life insurance policy in the state to a resident, the plaintiff's decedent. But the Court upheld jurisdiction in that case because the action "was based on a contract which had substantial connection with that State." *Id.* at 223, 78 S.Ct. at 201.

One year later, in *Hanson v. Denckla*, 357 U.S. 235, 78 S.Ct. 1228, 2 L.Ed.2d 858 (1958), the Court spoke of the "territorial limitations on the power of the respective States," *Id.* at 251, 78 S.Ct. at 1238, and said that "it is essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State...." *Id.* at 253, 78 S.Ct. at 1240.

The Court noted that the record in that case contained no evidence that the defendant had an office, or transacted or solicited any business "either in person or by mail" in the forum. *Id.* at 251, 78 S.Ct. at 1238. The requisite minimum contacts for the exercise of the state's power over the defendant were therefore found to be lacking.

Despite that cautionary note, the next 20 years were marked by a period of expansion of state power to acquire in personam jurisdiction. The states extended their long arm statutes as far as it was thought the Constitution would allow.[4] In 1977, the Court decided *Shaffer v. Heitner*, 433 U.S. 186, 97 S.Ct. 2569, 53 L.Ed.2d 683 (1977), followed closely by *Kulko v. Superior Court*, 436 U.S. 84, 98 S.Ct. 1690, 56 L.Ed.2d 132 (1978); *World-Wide Volkswagon Corp. v. Woodson, supra*, and *Rush v. Savchuk*, 444 U.S. 320, 100 S.Ct. 571, 62 L.Ed.2d 516 (1980), which reiterated the limitations of *International Shoe* and *Hanson v. Denckla*.

In each of those cases, the Court emphasized the restrictions that the due process clause places on the power of the state over nonresident defendants. Although some courts had stressed the plaintiff's interests, the Court made it clear that the first consideration must be the defendant's contacts with the forum. In *World-Wide Volkswagon*, it was explained that the concept of minimum contacts serves two purposes—protecting the defendant from litigating in an inconvenient forum, and secondly, insuring that states do not reach beyond the limits imposed on them as co-equal sovereigns in a federal system. 444 U.S. at 291, 100 S.Ct. at 564.

The Court agreed that the inconvenient forum aspect had been relaxed over the years because of the increased volume of interstate business and improvements in transportation and communication. In this context, reasonableness and fairness are prime considerations.

---

4. *See* Lewis, *The Grasp of Long Arm Jurisdiction Finally Exceeds its Reach: A Comment on World-Wide Volkswagon Corp. v. Woodson and Rush v. Savchuk*, 58 N.C.L.Rev. 407 (1980);

Note, *Retracting the Long Arm: World-Wide Volkswagon Corp. v. Woodson and Rush v. Savchuk*, 22 B.C.L.Rev. 385 (1981).

Although it also incorporates the idea of reasonableness, the principle of interstate federalism prohibits the entry of a binding in personam judgment against a defendant by a state having no contacts, ties, or relations with the nonresident.[5] The test as phrased by the Supreme Court is, therefore, whether "the defendant's conduct and connection with the forum State are such that he should reasonably anticipate being haled into court there." 444 U.S. at 297, 100 S.Ct. at 567 (citations omitted). Harkening back to *Hanson v. Denckla*, the Court said if a defendant " 'purposefully avails itself of the privilege of conducting activities within the forum state,' . . . it has clear notice that it is subject to suit there. . . ." 444 U.S. at 297, 100 S.Ct. at 567, *quoting Hanson v. Denckla*, 357 U.S. 235, 253, 78 S.Ct. 1228, 1240, 2 L.Ed.2d 858 (1958).

In *World-Wide Volkswagon*, a retail dealer and regional distributor, neither of whom had any contacts with the forum state, were found to be beyond the reach of in personam jurisdiction. But with respect to the situation pertinent to the case at hand, the Court said,

> "[I]f the sale of a product of a manufacturer or distributor . . . is not simply an isolated occurrence, but arises from the efforts of the manufacturer or distributor to serve, directly or indirectly, the market for its product in other States, it is not unreasonable to subject it to suit in one of those States if its allegedly defective merchandise has there been the source of injury to its owner or to others."

444 U.S. at 297, 100 S.Ct. at 567. The forum state does not violate due process when it asserts jurisdiction "over a corporation that delivers its products into the stream of commerce with the expectation that they will be purchased by consumers in the forum State." *Id.* at 298, 100 S.Ct. at 567.

The mere possibility or likelihood that a product will find its way into the forum is not enough to support jurisdiction. *Id.* at 297, 100 S.Ct. at 567. But Reg O falls in the category of a manufacturer that not only has placed its products into the stream of commerce but, in addition, has actively worked to retain its forum customers' good will and assure future patronage by selling repair parts, additional goods, and furnishing technical advice and assistance. The mailing of catalogues, price lists, and bulletins constitutes solicitation for future orders, whether direct or through distributors. The fact that the sales and other contacts are not expansive is simply a reflection of the reality that the jurisdiction itself is a small one, and market demands may not be great.

The continuing conduct of the defendant is purposeful activity intended to preserve and enlarge an active, though small, market in the Virgin Islands. The presence of Reg O products in the Islands is not fortuitous, but is the result of deliberate sales efforts. Therefore, the company could reasonably anticipate being involved in litigation there. *Cf. De James v. Magnificence Carriers, Inc.*, 654 F.2d 280 (3d Cir. 1981).

Having found that the required minimum contacts of the defendant were present, we look finally to see whether the plaintiff's interests are such that the Virgin Islands is a suitable forum. *Kulko v. Superior Court*, 436 U.S. at 92, 98 S.Ct. 1690, 56 L.Ed.2d 132. Because the plaintiff was a resident of the Virgin Islands and the accident occurred there, those considerations have been met. The Virgin Islands' jurisdiction over this case, therefore, is proper.

The order of the district court will be affirmed.

---

5. It might be argued that since the Virgin Islands is not a state, but a territory, the notion of interstate federalism is not a pertinent consideration. Congress's incorporation of the due process clause of the fourteenth amendment into the Revised Organic Act, however, is an indication that the same principles of territorial jurisdiction should apply to it as they would to a state. *See* 48 U.S.C. § 1561 (1976).