**BERYL BERTRAND, as Administratrix of the Estate of JACQUES-PIERRE BERTRAND, Plaintiff**

**v.**

**CORDINER ENTERPRISES, INC. d/b/a CORDINER AND ASSOCIATES; MICHAEL P. CORDINER; MYSTIC GRANITE AND MARBLE, INC.; ISLAND TILE AND MARBLE, LLC d/b/a VIRGIN ISLANDS GRANITE & MARBLE; and ABACO MACHINES USA, INC., Defendants**

Civil No. ST-08-CV-457

Superior Court of the Virgin Islands

Division of St. Thomas and St. John

June 2, 2010

283

DAVID A. BORNN, ESQ., ADAM THORP, ESQ., The Bornn Firm, P.L.L.C., St. Thomas, USVI, *Counsel for Plaintiff.*

SIMONE FRANCIS, ESQ., DAVID J. CATTIE, ESQ., Ogletree, Deakins, Nash, Smoak & Stewart, LLC, St. Thomas, USVI, *Counsel for Defendant Cordiner Enterprises, Inc.*

RICHARD H. DOLLISON, ESQ., Stryker, Duensing, Casner & Dollison, St. Thomas, USVI, *Counsel for Defendant Abaco Machines USA, Inc.*

PAUL M. PLATTE, ESQ., Rogers, Townsend & Thomas, PC, St. Thomas, USVI, *Counsel for Plaintiff.*

W. MARK WILCZYNSKI, ESQ., RUSSELL PATE, ESQ., Law Office of Wilczynski & Garten, P.C., St. Thomas, USVI, *Counsel for Defendants Island Tile & Marble, LLC, and Michael Cordiner.*

CARL A. BECKSTEDT III, ESQ., EMILY SHOUP, ESQ., Bryant Barnes Beckstedt & Blair LLP, Christiansted, USVI, *Counsel for Defendant Mystic Granite and Marble, Inc.*

CARROLL, *Judge*

## MEMORANDUM OPINION

(June 2, 2010)

**THIS MATTER** is before the Court on multiple Motions to Dismiss. The Court held oral argument on the Motions on January 5, 2010. Emily Shoup, Esq., of Bryant Barnes Beckstedt & Blair, LLP, appearing on behalf of Defendant Mystic Granite and Marble, Inc., argued Mystic's Motion to Dismiss based on lack of personal jurisdiction. Russell Pate, Esq., and W. Mark Wilczynski, Esq., of the Law Office of Wilczynski & Garten, P.C., appeared on behalf of Defendants Michael Cordiner and Island Tile and Marble, LLC. Attorney Pate argued Cordiner and Island Tile's Joint Motion to Dismiss based on the exclusivity of the workers' compensation scheme. Attorney Wilczynski argued Cordiner and Island Tile's Motion to Dismiss Abaco's Cross-Claim. Defendant Abaco Machines USA, Inc., was represented by Richard H. Dollison, Esq., of Stryker, Duensing, Casner & Dollison, who argued in opposition to the Motion to Dismiss Abaco's Cross-Claim. David J. Cattie, Esq., of Ogletree, Deakins, Nash, Smoak & Stewart, LLC, appearing on behalf of Defendant Cordiner Enterprises, Inc., argued Cordiner Enterprises' Motion to Dismiss and/or to Strike, a motion which all other Defendants have joined. David Bornn, Esq., and Adam Thorp, Esq., of The Bornn Firm, P.L.L.C., and Paul Platte, Esq., of Rogers, Townsend & Thomas, P.C., appeared on behalf of Plaintiff Beryl Bertrand. Attorney Platte argued in opposition to all Motions to Dismiss the Complaint. After oral argument, the Court approved the joint stipulation filed by Plaintiff and Island Tile to dismiss all claims against Island Tile.

## FACTS

### I. INTRODUCTION

On April 17, 2008, Jacques-Pierre Bertrand ("Bertrand") was crushed by a marble slab he was attempting to unload from a shipping container. At the time of the accident, he was working for his employer, Defendant Island Tile and Marble, LLC ("Island Tile").[1] He died from his injuries on April 29, 2008. Beryl Bertrand ("Plaintiff"), as administratrix of Bertrand's estate, brought this wrongful death and survival action. For the purpose of deciding the Rule 12(b)(6) motions to dismiss for failure to state a claim, the Court accepts the facts as stated by Plaintiff.

### II. PURCHASING AND LOADING THE MARBLE

The marble slab that fell on and killed Bertrand was purchased from Defendant Mystic Granite and Marble, Inc. ("Mystic"), a Florida company. It was brought from Florida to Island Tile's company property in the U.S. Virgin Islands by Defendant Michael Cordiner ("Cordiner"). Cordiner routinely travelled to Florida to purchase marble and tile from Mystic. Plaintiff alleges that he did so individually and as an agent for Defendant Cordiner Enterprises ("Cordiner Enterprises"). Over time, Cordiner developed a business relationship with Mystic. He would Call or e-mail Mystic to select marble he wished to purchase. He then travelled to Florida to procure the slabs. Mystic would allow Cordiner to bring a shipping container to, or leave it on, its Florida lot. Mystic employees sometimes assisted Cordiner to load his container. Cordiner then arranged for the container to be shipped to the U.S. Virgin Islands. Cordiner often purchased the marble on credit. Mystic's invoices to Cordiner state at the bottom, "We retain ownership and property rights to the material sold until their entire payment is settled." In addition to responding to Cordiner's purchase requests, Mystic also provided samples of marble to Cordiner by shipping them to Island Tile in the U.S. Virgin Islands.

### III. THE ACCIDENT

On April 17, 2008, Bertrand was in an Island Tile shipping container, unloading slabs of marble. A slab slipped and toppled on Bertrand and

---

[1] Plaintiff and Island Tile stipulated to Island Tile's dismissal, which the Court approved on March 30, 2010.

crushed him. His twin brother discovered him crushed under the slabs and attempted to assist him. Bertrand died twelve days later. Plaintiff asserts that Cordiner ordered Bertrand to enter into the device without warning him of the danger, and, when Bertrand was inside, jarred the device with a forklift, causing the slab to fall. Plaintiff also alleges that the marble was secured by a clamp manufactured by Defendant Abaco Machines USA, Inc. ("Abaco"), and that the clamp failed. Plaintiff further alleges that Mystic and Cordiner failed to properly secure the marble in the shipping container.

## DISCUSSION

## I. MICHAEL CORDINER'S MOTION TO DISMISS WILL BE GRANTED IN PART AND DENIED IN PART BECAUSE HE ENJOYS IMMUNITY ONLY FOR THE ACTS THAT HE COMMITTED ON BEHALF OF BERTRAND'S EMPLOYER, ISLAND TILE.

Michael Cordiner moves to dismiss Plaintiff's action pursuant to Federal Rule of Civil Procedure 12(b)(6) because, he contends, Plaintiff's sole remedy against a co-employee for the injuries suffered in the course of employment lies in the workers' compensation scheme.

### A. Standard for a Rule 12(b)(6) Motion to Dismiss

Rule 12(b)(6) of the Federal Rules of Civil Procedure[2] allows defendants to seek dismissal of complaints when the complaints "fail[ ] to state a claim upon which relief can be granted." As it considers such a motion, the Court will separate the factual allegations from the legal conclusions, and accept the factual allegations as true. *Ashcroft v. Iqbal*, ___ U.S. ___, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009); *Phillips v. County of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008). It will construe the Complaint in the light most favorable to the Plaintiff. *Phillips*, 515 F.3d at 231. The Court will then determine whether, "under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Id.*

Rule 12(b)(6) motions test the sufficiency of the pleadings and are designed to "screen out cases" in which there is no remedy for the wrong alleged or no relief could possibly be granted. *Port Auth. of New York and*

---

[2] The Federal Rules of Civil Procedure are applicable to matters before the Superior Court whenever they are not inconsistent with the Rules of the Superior Court. SUPER. CT. R. 7.

288

*New Jersey v. Arcadian Corp.*, 189 F.3d 305 (3d Cir. 1999). Motions to dismiss may allege that the complaint fails to state sufficient facts to establish plaintiff's entitlement to relief, or that the complaint states a legal theory that is not cognizable as a matter of law. In this case, Cordiner contends that Plaintiff states a legal theory that is not cognizable as a matter of law because it is preempted by the workers' compensation scheme.

The Court will separately consider those acts that Cordiner is alleged to have performed on behalf of Island Tile, Bertrand's employer, and those acts he is alleged to have performed individually or on behalf of Cordiner Enterprises.

### B. Cordiner Is Entitled to Dismissal for Acts Performed On Behalf of Island Tile.

■ The Virgin Islands Legislature established a workers' compensation scheme, V.I. CODE ANN. tit 24, §§ 250-92 (1997), which, in many cases, is the exclusive remedy for personal injury claims brought by employees against their employers. Tit. 24, § 284(a) ("When an employer·is insured under this chapter, the right herein to obtain compensation shall be the only remedy against the employer."). Plaintiffs are also generally barred from suing co-employees when they are harmed at work by the co-employees. There are, though, exceptions to the rule.

Plaintiff appears to concede that Cordiner's operation of his forklift immediately before the marble slab fell was an act performed on behalf of Island Tile and not any other entity. (Pl.'s Opp'n to Def. Cordiner's Mot. to Dismiss 4.) Plaintiff argues that she can sue Cordiner for the allegedly tortious acts he committed on behalf of Island Tile because the acts fall within a statutory exception to the rule of exclusivity in the workers' compensation scheme.

■ Despite its general exclusivity provision, the Workers' Compensation Act ("WCA") permits employees to sue third parties who are responsible for the injury they have suffered. Tit. 24, § 263. In this jurisdiction, generally speaking, the term "third parties" does not include co-employees because the acts of those co-employees are typically attributable to the employer. *Nickeo v. Atl. Tele-Network Co.*, 45 V.I. 149 (Terr. Ct. 2003). However, when a co-employee has a duty of care independent of the employer-employee relationship, liability may rest. *Id.* at 156; *Tavarez v. Klingensmith*, 267 F. Supp. 2d 448 (D.V.I. App. Div.

2003), *aff'd* 372 F.3d 188 (3d Cir. 2004) ("The common thread evident in these holdings [regarding co-employee liability under the WCA] is a determination that personal liability must rest on breach of a personal duty of care imposed by law."). There are two recurring fact patterns in which the courts thus far have recognized an independent personal duty: the operation of motor vehicles, *Anthony v. Lettsome*, 22 V.I. 328 (D.V.I. 1986); and engagement in ultra-dangerous activities, *Stokes v. George*, Civ. No. 401-1998 (Terr. Ct. Sept. 4, 1998).

1. *There Is No Independent Personal Duty to Operate a Forklift Carefully on Company Property.*

Cordiner's operation of a forklift on company property does not involve a personal duty independent of Bertrand's employer and, therefore, Cordiner would share the employer's immunity under the WCA.

■ Courts have found that there is an independent duty, separate and apart from an employer's duty, to operate vehicles on public roadways with reasonable care. *See, e.g., Nickeo*, 45 V.I. at 155 (adopting the Supreme Court of Puerto Rico's analysis permitting suit against co-employees when the tortfeasor possessed some independent, pre-existing duty separate and apart from that of the employer, such as the duty to carefully operate motor vehicles on public roadways). Plaintiff is not able to cite any support specific to the operation of a forklift, and instead analogizes between a forklift and a car.

■ Even if the Court were to adopt Plaintiff's analogy, it still could not find an independent personal duty to Bertrand. Cordiner was operating his forklift on his employer's private property. Every court within this jurisdiction to consider the question has drawn a distinction between operating a vehicle on an employer's private property and operating it on a public roadway. *See, e.g., Defoe v. Phillip*, 51 V.I. 34, 40 (V.I. Super. 2009) (finding that the duty to operate a vehicle safely on public roadways does not apply to a case in which the co-employee operated a vehicle within the employer's refinery); *Tavarez*, 267 F. Supp. 2d at 453 (observing that employee-drivers, like all drivers, owe a personal duty "to exercise care on the public roadways").

■ There are important public policy reasons to draw this distinction. Were the Court to find that operating a forklift at work, on company property, and around other work employees was sufficiently like operating

a motor vehicle on the public roadways, then employees and supervisors could be sued for operating any number of different kinds of movable machines at work, defeating, in part, the purpose of the compensation scheme. *Tavarez*, 267 F. Supp. 2d at 454 ("[I]mposing broad personal liability on employees for conduct done solely on behalf of their employer would be abhorrent to public policy and would destroy the intended statutory protections for employers, by potentially subjecting them indirectly to dual liability."). Therefore, Cordiner's operation of the forklift on company property created a duty of safety attributable only to his employer, Island Tile.

2. *Manipulating Slabs of Marble Does Not Constitute an Ultra-hazardous or Abnormally Dangerous Activity.*

As an alternative to the theory that Cordiner had an independent, personal duty to operate his forklift in a careful manner, Plaintiff argues that Cordiner's operation of the forklift to move heavy slabs of marble constituted an ultra-hazardous or abnormally dangerous activity and, therefore, falls within another exception to WCA's exclusivity rule. The Restatement suggests six factors that courts should consider when determining whether an activity is ultra-dangerous:

(a) the existence of a high degree of risk of some harm to the person, land or chattels of others;

(b) likelihood that the harm that results from the activity will be great;

(c) inability to eliminate the risk by the exercise of reasonable care;

(d) extent to which the activity is not a matter of common usage;

(e) inappropriateness of the activity to the place where it is carried on; and

(f) extent to which its value to the community is outweighed by its dangerous attributes.

RESTATEMENT (SECOND) OF TORTS § 520 (1977).[3] Courts should consider all of these factors and none of them alone is dispositive. Section 520 cmt. f. The central question is "whether the risk created is so unusual, either be-

---

[3] In the Virgin Islands, the common law, as expressed in the Restatements, is the binding law of the Territory, where not inconsistent with local law. V.I. CODE ANN. tit 1, § 4 (1995).

cause of its magnitude or because of the circumstances surrounding it, as to justify the imposition of strict liability for the harm that results from it, even though it is carried on with all reasonable care." *Id.*

The Court will consider each of the factors in turn. Cordiner's operation of a forklift on private company property to move heavy slabs of marble does not satisfy factor (e), inappropriateness of the place of activity. One would expect employees to operate their employer's forklifts on private property owned by their employer. Furthermore, it does not satisfy factor (c), as one could eliminate the risk of harm of using a forklift to move stone by exercising reasonable care. Factor (a) is probably not satisfied: the harm, if it occurs, is great, but the risk of that harm occurring is probably not great, that is, in the absence of negligence. Factor (f) is probably satisfied: it is only when an activity's value to the community is so great as to outweigh its risk that it will not be considered abnormally dangerous. Because moving stone with a forklift is not extremely valuable to the community, it may still be considered abnormally dangerous. Factor (b) is probably also satisfied: it is likely that, should harm result from the use of a forklift to move massive slabs of marble, the harm would be great. If the slabs slide, fall, or shift, the harm that would result would surely be on the measure of death or very serious injury to anyone on, under, or around them. Factor (d) is probably satisfied: it is only a small portion of the population that operates forklifts to move heavy quantities of stone.

In sum, taking into consideration all of the factors above, the operation of a forklift to move heavy slabs of marble is not an abnormally dangerous or ultra-hazardous activity. In this case, it took place in a location normal for that activity; it does not carry a great risk of harm; and the harm would probably not happen in the absence of negligence. Because this is not an abnormally or ultra-dangerous activity, it should not be considered a "plus" factor to find Cordiner liable outside the WCA scheme.

### C. Cordiner Is Not Immune for Acts Committed Individually or on Behalf of Cordiner Enterprises.

Plaintiff contends that her suit may go forward against Cordiner because, when Cordiner loaded and secured the marble slabs within the shipping container in Florida, he was acting on behalf of himself, Cordiner Enterprises or Mystic, and not on behalf of Bertrand's employer, Island Tile. (Compl. ¶¶ 10, 18-19.)

292

In paragraph ten of the Complaint, Plaintiff alleges that "Defendants Cordiner, Cordiner Enterprises and/or Mystic loaded numerous stone slabs into a transportation device in Florida. They loaded the slabs in such a way as to create a trap for whomever unloaded the slabs upon their arrival in St. Thomas." (Compl. ¶ 10.) The allegation that Cordiner was acting on behalf of Cordiner Enterprises or acting individually when he purchased and loaded the marble is a factual allegation and, therefore, is entitled to the assumption of truth at this stage. *Iqbal*, 129 S. Ct. at 1949. Assuming Cordiner was acting on behalf of himself or Cordiner Enterprises, his acts were those of a "third party" for the purposes of the WCA. V.I. CODE ANN. tit. 24, § 263 (permitting employees to sue third parties if the third party is responsible for the employee's injuries). Therefore, the Court finds that Plaintiff has pleaded sufficient facts to plausibly suggest her claim of negligence in paragraph ten (10).

██ ██ In paragraphs eighteen and nineteen, Plaintiff alleges that Cordiner Enterprises and Mystic committed certain tortious acts "by and through [their] agents and servants (including without limitation Michael Cordiner)." (Compl. ¶¶ 18-19.) Cordiner maintains that such an allegation is insufficient to state a claim against Cordiner himself, as the relevant paragraphs state that Cordiner Enterprises and Mystic were negligent, not that Cordiner himself was negligent. However, the Court finds that Plaintiff has sufficiently pleaded a claim of negligence against Cordiner himself. While *Twombly* and *Iqbal* clarified Rule 8's pleading standard, those cases do not represent a new, heightened standard. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 569 n.14, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007). Here, Plaintiff has alleged that Cordiner engaged in a number of acts on behalf of Cordiner Enterprises and/or Mystic, including, *inter alia*, failing to properly load the shipping container, failing to use the proper shipping container, and failing to secure the marble slabs in a safe manner. The fact that Cordiner may have committed these allegedly tortious acts on behalf of another does not diminish Cordiner's potential liability. According to the Restatement,

> [a]n agent is subject to liability to a third party harmed by the agent's tortious conduct. Unless an applicable statute provides otherwise, an actor remains subject to liability although the actor acts as an agent or an employee, with actual or apparent authority, or within the scope of employment.

RESTATEMENT (THIRD) OF AGENCY § 7.01 (2006). Because Cordiner can be held liable for his allegedly tortious acts, regardless of the fact that he committed them on behalf of Cordiner Enterprises or Mystic, Plaintiff has pleaded sufficient facts to make her claim of negligence against Cordiner plausible. Therefore, the Court will allow Plaintiff to go forward against Cordiner with those claims stated in paragraphs ten, eighteen, and nineteen.

## II. CORDINER IS ENTITLED TO A DISMISSAL OF ABACO'S CLAIMS FOR CONTRIBUTION, BUT ONLY TO THE EXTENT THAT CORDINER IS PROTECTED BY THE WORKERS' COMPENSATION STATUTE.

Defendant Abaco purportedly manufactured a clamp that was used to secure the marble slabs that ultimately killed Bertrand. Abaco has asserted cross-claims against Cordiner Enterprises, Michael Cordiner, Island Tile, and Mystic. The cross-claims state that Abaco is seeking "contribution for all sums." Michael Cordiner and Island Tile have moved to dismiss the cross-claims.

Because the Court dismissed Plaintiff's claims against Island Tile, it cannot be found liable for Plaintiff's harms. Since Island Tile is not liable, Abaco will not be entitled to contribution from it. RESTATEMENT (THIRD) OF TORTS: APPORTIONMENT OF LIAB. § 23 (2000) (stating that parties are entitled to contribution only from those parties that are liable for some harm). Accordingly, the Court will grant Island Tile's Motion to Dismiss Abaco's Cross-Claim against it. Because there are no other claims pending against it, Island Tile will be dismissed from the case.[4]

The basis for Michael Cordiner's Motion to Dismiss is that the Workers' Compensation Act, discussed above, not only bars direct claims from an employee, but also bars claims for contribution from third parties. (Abaco Opp'n. to Mot. to Dismiss Cross-cl.) Abaco responds that it seeks contribution because of its co-Defendants' misuse of its clamp and that, therefore, its claim against Cordiner is independent of Plaintiff's claim against him. Abaco states that Cordiner had a "duty of care to Abaco to use the products as prescribed and instructed" and that they "breached the implied covenant of their supply contracts with Abaco and others to use

---

[4] The Court granted Plaintiff and Island Tile's Joint Stipulation to dismiss Plaintiff's claims against Island Tile on March 30, 2010.

the clamp in a workmanlike and safe manner." Because the Court decides that Plaintiff's claims against Cordiner in paragraphs ten, eighteen, and nineteen are not barred by the WCA, any contribution Abaco seeks for sums paid on those claims would likewise not be barred by the WCA. Therefore, the Court only considers whether Abaco's contribution claim against Cordiner can go forward on those of Plaintiff's claims against Cordiner that are barred by the WCA.

■■■ Abaco's cross-claim states that it is seeking "contribution for all sums that may be adjudged or attributed against Abaco."[5] There are no binding decisions in this jurisdiction addressing the question of whether a third party can succeed on a contribution claim against an employer protected by the WCA. Cordiner would have us consider recent cases by the courts of Puerto Rico, as the Virgin Islands' WCA is patterned after Puerto Rico's workers' compensation statute. He cites *Berkeley v. West Indies Enterprises, Inc.*, 480 F.2d 1088, 10 V.I. 619 (3d Cir. 1973), for the proposition that "[t]he interpretation of a statute by the highest court in the jurisdiction from which a statute is adopted is presumed to reflect the intent of the Virgin Islands Legislature." However, Cordiner fails to note what *Berkeley* explicitly requires: that the foreign court's interpretation occur *before* the enactment of the Virgin Islands statute.[6] *Berkeley*, 480 F.2d at 1092 ("[A] Virgin Islands statute which has been taken from the statutes of another jurisdiction is to be construed to mean what the highest court of the jurisdiction from which it was taken had, *prior to its enactment in the Virgin Islands*, construed it to mean." (emphasis added)). The case Cordiner would have the Court consider as binding was decided in 1996, long after the WCA's enactment in 1954. Therefore, it is only persuasive authority.

---

[5] Abaco's Opposition to Cordiner's Motion to Dismiss states that it is seeking "indemnification" and not "contribution." However, the Court will consider its claim as one for contribution only. The Court must construe the pleadings to "do justice," FED. R. CIV. P. 8(e), but such a requirement does not give this Court the liberty to transform one legal claim into another, especially because that would not do justice in this case, as the movants prepared and made their arguments against a contribution, rather than indemnification, claim. Had Abaco pleaded indemnification in the alternative, the Court would have determined whether, in this jurisdiction, a third party can seek indemnification against an insured employer that is protected from suit under the WCA. However, the Court cannot reach this question because Abaco never actually pleaded a claim for indemnification.

[6] It is unhelpful to the Court to paraphrase case support in such a way that important delimiting principles are omitted.

■ Title 1, section 4 of the Virgin Islands Code requires courts to look to the common law for the rules of decision where there are no local laws to the contrary. Tit. 1, § 4. That provision first requires the Court to determine whether the "restatements of the law approved by the American Law Institute" express the common law rule on the question. The Restatement (Third) of Torts does not state a definitive answer to the question before this Court.[7] The Restatement (Second) of Torts, however, does take a position. It states that where an employer avoids liability by operation of a workers' compensation statute, the employer is not liable for contribution to a third party. RESTATEMENT (SECOND) OF TORTS § 886A (1979). The Court will consider other expressions of the common law to determine if the Restatement (Second) states the current common law. *See Manbodh v. Hess Oil V.I. Corp.*, 47 V.I. 375 (Terr. Ct. 2006) (observing that the Court is not required to apply the most recent version of the Restatement).

■ The American Law Reports address the question and conclude that, where a workers' compensation statute includes an exclusive remedy provision, "the nearly unanimous view has been that contribution is barred, the courts generally concluding that by reason of the exclusive remedy provisions, there could be no common liability of the employer and the third person in tort so as to allow contribution." Joel D. Smith, Annotation, *Modern Status of Effect of State Workmen's Compensation Act on Right of Third-Person Tortfeasor to Contribution or Indemnity from Employer of Injured or Killed Workman*, 100 A.L.R.3D 350 (1980). The annotation is consistent, therefore, with the Restatement (Second) of Torts and not inconsistent with the Restatement (Third) of Torts. Because the annotation appears to express the common law on the question, and because it is consistent with an earlier version of the Restatement, the Court will apply its conclusion as the rule of decision for this case.

Considering this rule, Cordiner would be entitled to a dismissal of Abaco's cross-claim for contribution to the extent that Cordiner is immune from liability by operation of the WCA. As stated above, however, the Court will dismiss those of Plaintiff's claims against Cordiner that are barred by the WCA. For the remaining claims for which

---

[7] Rather, the Restatement (Third) of Torts simply refers readers to some case law in Minnesota permitting contribution claims. It explicitly states that it "takes no position on the question." RESTATEMENT (THIRD) OF TORTS: APPORTIONMENT OF LIAB. § 23 (2000).

Cordiner is not immune, i.e., those stated in paragraphs ten, eighteen and nineteen of Plaintiff's Complaint, Abaco's Cross-Claim for contribution survives, and the Court will deny Cordiner's Motion to Dismiss the Cross-Claim.

## III. MYSTIC'S MOTION TO DISMISS MUST BE DENIED BECAUSE THE COURT'S EXERCISE OF PERSONAL JURISDICTION IS CONSISTENT BOTH WITH THE VIRGIN ISLANDS' LONG-ARM STATUTE AND CONSTITUTIONAL DUE PROCESS.

Mystic's connections with the Territory of the U.S. Virgin Islands are sufficient to satisfy three prongs of the Virgin Islands' long-arm statute. In addition, the exercise of .personal jurisdiction over Mystic is consistent with the Constitution's guarantee of due process. Consequently, the Court will deny Mystic's Motion to Dismiss for lack of personal jurisdiction.

### A. Standard for a Rule 12(b)(2) Motion to Dismiss.

It is Plaintiff's burden to prove that the Court's exercise of jurisdiction over the Defendant is consistent with local law and the Constitution. *Metcalfe v. Renaissance Marine, Inc.*, 566 F.3d 324, 330, 51 V.I. 1219 (3d Cir. 2009). Once a jurisdictional defense has been raised, the plaintiff "must 'prove by affidavits or other competent evidence that jurisdiction is proper." *Id.* Where, as here, the Court has not held an evidentiary hearing, Plaintiff is required only to establish a *prima facie* case for jurisdiction. *Metcalfe*, 566 F.3d 324, 330, 51 V.I. 1219. In this case, both Plaintiff and Mystic have produced documentary evidence on the question of personal jurisdiction. In considering 12(b)(2) motions, the Court will accept the non-movant's factual allegations as true, and construe factual disputes in favor of the non-moving party. *Paradise Motors, Inc. v. Toyota de Puerto Rico Corp.*, 314 F. Supp. 2d 495, 499 (D.V.I. 2004).

### B. Personal Jurisdiction Jurisprudence in the Virgin Islands.

Mystic moves for dismissal because, it argues, Plaintiff has not made out a sufficient basis for personal jurisdiction under the long-arm statute. (Mystic Mot. to Dismiss Nov. 3, 2008.) Plaintiff, for her part, argues that Mystic's conduct would satisfy one or more of three subsections of the long-arm statute. (Pls'. Opp'n to Mystic Mot. to Dismiss.) The relevant provisions of the statute provide:

(a) A court may exercise personal jurisdiction over a person, who acts directly or by an agent, as to a claim for relief arising from the person's

(1) transacting any business in this territory;

(2) contracting to supply services or things in this territory; [or] . . .

(4) causing tortuous injury in this territory by an act or omission outside this territory if he regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in this territory.

V.I. CODE ANN. tit. 5, § 4903 (1997).

██ Virgin Islands courts apply a two-part test to determine if jurisdiction over a defendant is proper. *Matos v. Nextran*, 51 V.I. 630, 635 (D.V.I. 2009). First, the Court considers whether the defendant's conduct meets the requirements of the long-arm statute. *Id.* If so, the Court will then address whether the exercise of jurisdiction would comport with the defendant's due process rights. *Id.* In the Virgin Islands, the long-arm statute is "co-extensive with [sic] outer limits permitted by the Due Process Clause of the Fourteenth Amendment of the United States Constitution." *In re Kevin Manbodh*, 47 V.I. 267, 277 (Super. Ct. 2005); *see also Godfrey v. Int'l Moving Consultants, Inc.*, 18 V.I. 60, 66 (D.V.I. 1980).

## C. Mystic Transacted Business in the Territory.

██ According to section 4903(a)(1), even one single act amounting to a "transaction of business" in the Territory may suffice as the basis for personal jurisdiction. *Metcalfe v. Renaissance Marine, Inc.*, 566 F.3d 324, 332, 51 V.I. 1219 (3d Cir. 2009) (citing *Fin. Trust Co. v. Citigroup*, 268 F. Supp. 2d 561, 567 (D.V.I. 2003)). The conduct need not rise to the level of "doing business," but must be more than an inconsequential act. *Manbodh*, 47 V.I. at 283; *see also Hendrickson v. Reg O Co.*,17 V.I. 457, 462 (D.V.I. 1980).

██ Plaintiff has met her burden under section 4903(a)(1). According to the Third Circuit, it is enough that a foreign company communicates with a Virgin Islands plaintiff over the phone, fax and e-mail in order to negotiate the sale of a high-priced item. *Metcalfe*, 566 F.3d at 332 ("[T]he

Metcalfes assert that Renaissance exchanged phone calls, faxes and emails with the Metcalfes . . . Because one single act can constitute 'transacting business,' surely repeated, reciprocal communications between a buyer in the Virgin Islands and a seller located elsewhere which culminate in an agreement for the same of an item at a cost of nearly $85,000 also satisfies the standard."). In this case, Plaintiff alleges that Mystic engaged in repeated, reciprocal communications via e-mail, and perhaps also phone calls, with the Virgin Islands purchaser of its marble, Island Tile, over a three-year period of time, resulting in sales of nearly Four Hundred Thousand Dollars ($400,000.00). Therefore, this case is quite similar to *Metcalfe*. The Court finds that Plaintiff has satisfied her burden of establishing a *prima facie* case for personal jurisdiction under 4903(a)(1). The Court will also consider her alternative arguments of jurisdiction under two other provisions of the long-arm statute.

### D. Mystic Contracted to Supply Goods in the Territory.

█ Plaintiff also argues that personal jurisdiction is proper under section 4903(a)(2) of the long-arm statute. All that is required to satisfy section 4903(a)(2) is that a "contract be performed, at least in part, in the Virgin Islands and that the cause of action arise out of the contract." *Buccaneer Hotel Corp. v. Reliance Int'l Sales Corp.*, 17 V.I. 249, 255 (Terr. Ct. 1981). If a defendant knows that the ultimate destination of its goods will be the Virgin Islands, that is sufficient to find that the contract is performed, at least in part, in the Virgin Islands. *Metcalfe*, 566 F.3d at 332; *Buccaneer*, 17 V.I. at 256. The defendant need not actually ship the goods to the Virgin Islands. The language of the statute permits jurisdiction if the contract is "to supply" goods to the Virgin Islands and it does not require that the defendant contract "to deliver" or "to ship" those goods. *Metcalfe*, 566 F.3d at 333; *Buccaneer*, 17 V.I. at 256.

█ In this case, Plaintiff has produced evidence that Mystic knew its marble slabs were destined for the Virgin Islands. All of the invoices Mystic produced for the marble it sold to Cordiner list an address in St. Thomas. In addition, Mystic's Vice President for Sales and Marketing, Donna Maura, stated in her deposition that Mystic knew that the products it sold to Island Tile & Marble were destined for the Virgin Islands. (Mauro Dep. 19.) Since Mystic knew that all of its Island Tile marble was meant for the Virgin Islands, then it knew that the marble involved in the accident from which this action arose was destined for the Virgin Islands.

Because Mystic knew the marble was destined for the Virgin Islands, the contract was performed, at least in part, in the Virgin Islands, even if Mystic did not deliver the marble itself. Plaintiff has met her burden under subsection (a)(2).

### E. Personal Jurisdiction is Proper Under Section 4903(a)(4).

Courts may exercise jurisdiction over a defendant if it causes tortious injury in the Virgin Islands by an act or omission outside the Territory and if it regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or service rendered in the Territory. Tit. 5, § 4903(a)(4). The course of conduct in which the defendant engages that establishes jurisdiction under subsection (a)(4) need not be related to the tortious action. *Hendrickson*, 657 F.2d 9, 12 (3d Cir. 1981). Furthermore, each category could, by itself, be enough to sustain jurisdiction, but the court may consider all of the categories together, as the conduct "may be sufficient cumulatively to establish a jurisdictional presence, even though no single element would suffice." *Id.*

In determining whether a defendant has derived substantial revenue from goods used or consumed or services rendered in the U.S. Virgin Islands, the Court need not compare the Virgin Islands-derived total revenue with a defendant's total sales worldwide. *Id.* at 12-13 (observing that a simple ratio test would significantly advantage very large, global corporations). Instead, the Court must consider whether the Virgin Islands sales were "isolated or exceptional occurrences" or whether they "were part of a regular course of dealing." *Id.* at 13.

The facts presented in this case are similar to those in *Hendrickson*, in which the volume of sales in the Virgin Islands was slight as a percentage of the defendant's overall sales, but the sales resulted from a regular course of dealing. In this case, Mystic derived over Four Hundred Thousand Dollars ($400,000.00) in revenue from sales to Island Tile over a three-year period. These were not isolated or exceptional occurrences. Rather, Mystic's dealings with Island Tile and Cordiner were so regular that Mystic's employees referred to Cordiner as "Island Mike." In addition, Mystic, just like the defendant in *Hendrickson*, regularly engaged in conduct to solicit business in the Virgin Islands by repeatedly shipping samples of its products to Island Tile in the Virgin Islands. *Hendrickson*, 657 F.2d at 13 ("The defendant's method of promoting its

300

products evidence solicitation of business . . . This business seeking activity, combined with the company's continuing sales of its products to the Islands, also establishes a persistent course of conduct that was both voluntary and profitable."). Just as in *Hendrickson*, therefore, the Court finds that there is sufficient evidence that jurisdiction is proper under subsection (a)(4).

### F. The Exercise of Jurisdiction over Mystic is Consistent with Due Process.

 Having determined that Plaintiff has produced sufficient evidence to justify the exercise of jurisdiction over Mystic based on the long-arm statute, the Court will determine whether the exercise of that jurisdiction is consistent with the requirements of due process.[8] For the Court to exercise personal jurisdiction over a non-resident defendant consistent with the due process clause, the Court must find that the defendant has "certain minimum contacts" with the Territory such that maintaining the suit in that forum "does not offend 'traditional notions of fair play and substantial justice.' " *International Shoe Co. v. Washington*, 326 U.S. 310, 66 S. Ct. 154, 90 L. Ed. 95 (1945). Courts may exercise jurisdiction over a company that "delivers its products into the stream of commerce with the expectation that they will be purchased by consumers in the forum state." *World-Wide Volkswagon Corp. v. Woodson*, 444 U.S. 286, 298, 100 S. Ct. 559, 62 L. Ed. 2d 490 (1980). It is not enough that there is a "mere possibility or likelihood" that the product will end up in the Virgin Islands. *Hendrickson*, 657 F.2d at 15. However, where the company "has actively worked" to maintain and serve its Virgin Islands customers, and where the presence of its goods in the Islands is more than "fortuitous," the exercise of jurisdiction is consistent with due process. *Id.*

 In this case, Mystic did not simply release its goods into the stream of commerce without any expectation of where they might be purchased or delivered. Rather, as described above, Plaintiff has produced evidence that Mystic knew that the marble it sold to Island Tile would be delivered to the Virgin Islands. Mystic actively worked to increase the sales of its goods to the Islands by communicating by phone and e-mail

---

[8] The Revised Organic Act of the U.S. Virgin Islands incorporates both the Fifth Amendment to the Constitution and the Due Process Clause of the Fourteenth Amendment 48 U.S.C. § 1561 (2006); *see also In re Brown*, 439 F.2d 47, 50-51, 8 V.I. 313 (3d Cir. 1971).

with Island Tile and by shipping samples of its goods to Island Tile. The presence of Mystic's marble in the Virgin Islands is more than fortuitous — it is the result of Mystic's own activities to market and provide that marble to Island Tile. This kind of activity purposefully directed towards a consumer in the Virgin Islands justifies the Court's exercise of jurisdiction over Mystic. Because Plaintiff has met her *prima facie* burden of producing evidence that the Court's exercise of personal jurisdiction satisfies both the long-arm statute and due process, the Court will deny Mystic's Motion to Dismiss.

## IV. CORDINER ENTERPRISES' MOTION TO DISMISS AND/OR STRIKE MUST BE GRANTED BECAUSE PLAINTIFF'S CLAIMS UNDER SECTIONS 76 AND 77 ARE INCOMPATIBLE.

As a final matter, the Court turns to the Motion filed by Cordiner Enterprises to dismiss or strike certain of Plaintiff's claims. Cordiner Enterprises argues that Plaintiff cannot maintain an action pursuant to both Section 76 and Section 77 of Title 5. He therefore requests that the Court strike or dismiss the improper claims.

Section 77 of Title 5 provides for the survival of tort actions. It states that an "action arising out of a wrong which results in physical injury . . . shall not abate . . . by reason of the death of the person injured." If the injured individual dies before a judgment is rendered in his favor in his civil suit, "the damages recoverable for such injury shall be limited to loss of earnings and expenses sustained or incurred as a result of the injury by the deceased prior to his death, and shall not include damages for pain, suffering and disfigurement, nor punitive or exemplary damages, nor prospective profits of earnings after the date of death." Tit. 5, § 77. Section 76, on the other hand, allows survivors to maintain an action against tortfeasors for the wrongful death of an individual. The statutory scheme permits the decedent's personal representative to "recover for the benefit of the decedent's survivors and estate all damages, as specified in this section, caused by the injury resulting in death." Tit. 5, § 76.

The case law interpreting sections 76 and 77 makes it clear that plaintiffs must choose the appropriate remedy between the two provisions and may not recover under both if it is clear whether the actionable injury caused the death. *Hamilton v. Dowson Holding Co.*, 51 V.I. 619, 625 (D.V.I. 2009); *Fleming v. Whirlpool Corp.*, 301 F. Supp. 2d 411, 414, 45 V.I. 439 (D.V.I. 2004). When the tortfeasor's act caused the injury that

leads to death, plaintiffs are entitled to recover only under the wrongful death provisions of section 76, and not under the survival of torts provision of section 77. *Fleming*, 301 F. Supp. at 413.

█ Because it is uncontroverted that Bertrand died as a result of the injuries sustained from the marble-unloading accident at the heart of this matter, Plaintiff is entitled to the remedies provided for in section 76 only. She is entitled to recover lost support and services, medical and funeral expenses, and lost earnings. She is not entitled to recover, however, punitive damages, *Boyd v. Atlas Motor Inn, Inc.*, 16 V.I. 367 (D.V.I. 1979), or pain and suffering, *Hamilton*, 51 V.I. at 625. Therefore, the Court will grant Cordiner Enterprises' Motion to Dismiss those of Plaintiff's claims that request remedies provided for in section 77.

## CONCLUSION

Because the Workers' Compensation Act prevents plaintiffs from recovering against their co-employees and supervisors, Michael Cordiner's Motion to Dismiss will be granted as to those of Plaintiff's claims that relate to actions Cordiner took on behalf of Bertrand's employer. Although Abaco could not sustain a claim for contribution against an immune co-Defendant, because Cordiner allegedly acted in some respects on behalf of Cordiner Enterprises and Mystic, Abaco's cross-claim for contribution can survive as to Plaintiff's remaining claims. Mystic's Motion to Dismiss will be denied because the Court's exercise of personal jurisdiction over it comports with the Virgin Islands long-arm statute and is consistent with constitutional due process. Finally, because Plaintiff cannot sustain claims under both section 76 and 77 of Title 5, Cordiner Enterprises' Motion to Dismiss will be granted, and the Court will dismiss Plaintiff's claims for pain and suffering and punitive damages. An Order of even date will issue.